**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

THE CENTURY FOUNDATION,

               Plaintiff,

      v.                                    No. 18-cv-1128-PAC

BETSY DEVOS, *in her official capacity*, and
the UNITED STATES DEPARTMENT OF
EDUCATION,

               Defendants.

**TCF'S MEMORANDUM OF POINTS AND AUTHORITIES TO
SUPPORT A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION**

Alexander S. Elson* (N.Y. Bar 4809976)
National Student Legal Defense Network
1440 G Street, N.W.
Washington, D.C. 20005
alex@nsldn.org
(202) 734-7495

*Counsel for The Century Foundation*

*Member of New York Bar only; practicing in the
District of Columbia under supervision of members
of the D.C. Bar while D.C. Bar application is
pending.

Dated:  February 13, 2018

## TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................1

**STATEMENT OF FACTS** ..................................................................................3

   A.   Accrediting Agency Approval Process...........................................................3

   B.   The Department's Solicitation .......................................................................5

   C.   TCF's Attempts to Receive the Information...................................................6

**ARGUMENT** .......................................................................................................7

   I.   PLAINTIFF HAS STANDING TO CHALLENGE THE DEPARTMENT'S
      FAILURE TO COMPLY WITH THE HEA COMMENT REQUIREMENTS .............8

   II.   TCF HAS ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE MERITS
      OF BOTH ITS APA AND FOIA CLAIMS. ...........................................13

      a.   With respect to its APA claim, TCF has established a likelihood of success
         or, at minimum, sufficiently serious questions going to the merits.....................13

         1.   TCF's likelihood of success regarding the ABA Report...........................14

         2.   TCF's likelihood of success regarding the ACICS Application.................15

      b.   With respect to its FOIA claims, TCF has established a likelihood of success
         or, at minimum, sufficiently serious questions going to the merits.....................18

   III.  PLAINTIFF WILL SUFFER IRREPERABLE HARM ABSENT EMERGENCY
      RELIEF ....................................................................................................21

   IV.  THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN FAVOR OF
      GRANTING TEMPORARY RESTRAINING ORDER .............................21

   V.   THE PUBLIC INTEREST WILL BE SERVED BY A TEMPORARY
      RESTRAINING ORDER ..........................................................................23

**CONCLUSION** ..................................................................................................24

## INTRODUCTION

The U.S. Department of Education ("ED" or the "Department") is on the verge of closing a statutorily required third-party comment period without providing plaintiff, the Century Foundation ("TCF") the documents and information it is entitled to receive.  By refusing to provide this information, the Department is undermining Congress's clear directive that the process at issue be open, transparent, and subject to public comment.

This case arises from the legal requirement that the Department solicit, receive, and consider third-party comments regarding two specific higher education accrediting agencies under review.  *See* Higher Education Act of 1965, as amended ("HEA") §496(n)(1), 20 U.S.C. § 1099b(n)(1); 83 Fed. Reg. 3335 (Jan. 24, 2018) (hereinafter "the Solicitation").  There is no question that the Department is required to solicit comments, as it nominally has; nor is there a question that the Department is required to consider the comments, as it presumably will.  At issue here is solely whether the Department can discharge its legal obligation to solicit comments while depriving TCF—a non-partisan think tank and advocacy organization with a history of commenting on higher education accreditation—from access to information vital to inform comments and to which the comments "must" relate.  83 Fed. Reg. 3335-36 (Jan. 24, 2018).

To participate in the federal student assistance programs authorized by Title IV of the HEA (*e.g.*, federal Direct Loans and Pell Grants), institutions of higher education must, *inter alia*, be accredited.  *See* HEA § 101(a)(5); 20 U.S.C. §1001(a)(5).  The Department does not directly accredit institutions; rather, it "recognizes" accreditors, which act as the "gatekeepers"[1] of federal student aid programs that provide more than $120 billion in federal student aid

---

[1]     U.S. Department of Education Press Release:  Education Department Establishes Enhanced Federal Aid Participation Requirements for ACICS-accredited Colleges (Dec. 12, 2016) *available at*: https://www.ed.gov/news/press-releases/education-department-establishes-enhanced-federal-aid-participation-requirements-acics-accredited-colleges (hereinafter "ED Press Release").

annually, to approximately 13 million students at nearly 6,000 participating institutions of higher education.[2]

The process for recognizing an accrediting agency—*i.e.*, the process by which the Department approves entities to act as the gatekeeper for this enormous federal program—is set forth by statute and regulation. *See generally* HEA § 496, 20 U.S.C. § 1099b; 34 C.F.R. Part 602. Among the numerous requirements, and key to the issue presented here, is that Congress has required the Department to solicit public comments.  HEA § 496(n)(1), 20 U.S.C. § 1099b(n)(1). The Department, in turn, has promulgated regulations detailing not only the substance of those written comments (*i.e.*, that comments must relate to accrediting agency compliance with the recognition criteria), but also the importance of those comments (*i.e.*, that the written comments are analyzed by ED staff, provided to a statutorily authorized Federal Advisory Committee, and become part of the record underlying the Department's final action).  *See generally* 34 C.F.R. Part 602 Subpart C.

In this case, the Department has called for public comment regarding numerous accrediting agencies under review, while simultaneously failing to provide documents and information critical to enable TCF to provide informed comments.  With respect to the American Bar Association ("ABA"), which accredits numerous freestanding law schools for Title IV purposes, the Department has solicited comments about a Compliance Report ("ABA Report") that the Department ordered the ABA to submit and to which the Solicitation requires the comments "must" relate.  Nevertheless, the Department refuses to make the ABA Report public. Additionally, with respect to the Accrediting Council for Independent Colleges and Schools ("ACICS"), formerly the largest federally-recognized accreditor of for-profit colleges and

---

[2]         U.S. Department of Education Federal Student Aid 2017 Annual Report, *available at* https://www2.ed.gov/about/reports/annual/2017report/fsa-report.pdf.

universities, the Department has solicited comments about an "Application for Initial Recognition" ("ACICS Application") that must show evidence of ACICS's compliance with recognition criteria, but has refused to provide the application itself to the public.

The comment period closes on February 16, 2018. TCF has sought to alleviate its informational injuries by requesting the documents through expedited requests under the Freedom of Information Act. Nevertheless, the Department refuses to release the materials, and is accordingly preventing public engagement and introducing secrecy and ambiguity into a process that Congress intended to be transparent and informed. Through this suit, and the request for emergency relief, Plaintiff seeks only to gain access to the information that is necessary for it to provide informed comments, and give it additional time to provide such comments, in accordance with its legal right to do so.

## STATEMENT OF FACTS

### A. Accrediting Agency Approval Process

Any institution participating in the Title IV student financial assistance programs must be accredited by an accrediting agency recognized by the Secretary to be a reliable authority as to the quality of education or training offered. HEA §§ 101, 496; 20 U.S.C. §§ 1001, 1099b. The Department does not accredit institutions of higher education. Rather, as required by Congress, *see* HEA § 496(o), 20 U.S.C. § 1099b(o), ED has established a process for agencies to apply for recognition, has set standards governing agency recognition, and has developed a process for ongoing monitoring of accrediting agencies. *See generally* 34 C.F.R. Part 602.

An entity seeking initial recognition as an accrediting agency must "submit a written application to the Secretary." 34 C.F.R. § 602.31(a). That application "must consist" of three prescribed items, namely (1) "a statement of the agency's requested scope of recognition"; (2)

3

"[e]vidence, including documentation, that the agency complies with the criteria for recognition listed in subpart B of [34 C.F.R. Part 602] and effectively applies those criteria"; and (3) with respect to agencies providing distance education, the application must consist of "evidence, including documentation of how [the] agency … applies its standards in evaluating programs and institutions it accredits that offer distance education."  34 C.F.R. § 602.31(a).  Because the "evidence" must demonstrate that the agency "complies with the criteria for recognition," an accrediting agency must provide evidence that, for example, it has "the administrative and financial capability" to carry on accreditation activities, including, *inter alia*, (1) adequate staffing, (2) competent and qualified staff, (3) academic and administrative personnel on its evaluation, policy, and decision-making bodies, (4) educators and practitioners on its evaluation, policy, and decision-making bodies, (5) public representation, and (6) internal controls, *id.* § 602.15, including standards for monitoring conflicts of interest or the appearance of conflicts.

After ED receives an application or a compliance report it has ordered to be submitted, it publishes a notice in the Federal Register "inviting the public to comment on the agency's compliance with the criteria for recognition and establishing a deadline for receipt of public comment." 34 C.F.R. § 602.32(a).  The Department has interpreted its regulations and process to provide that this written comment period is the "[o]nly" opportunity to provide "written material [to] . . . become part of the official record" concerning the review of accrediting agencies.  83 Fed. Reg. 3336 (Jan. 24, 2018).

Department staff must analyze the application or compliance report, which "includes" a "[r]eview of the public comments" received.  34 C.F.R. § 602.32(b)(2).  When staff "completes its evaluation," it then "prepares a written draft analysis" and sends the draft, "including all third-party comments the Department received by the established deadline" to the accrediting agency

under review.  *Id.* §§ 602.32(f)(1)-(5).  The accrediting agency may respond to the Department,

prior to staff finalizing its analysis, report, and recommendation to a "Senior Department

Official" or "SDO."  *Id.*  §§ 602.32(b)(3)-(5).  The final staff analysis is also provided to the

National Advisory Committee on Institutional Quality and Integrity ("NACIQI"), a federal

advisory committee subject to the Federal Advisory Committee Act, along with the application

or compliance report and other materials, including "written third-party comments the

Department received about the agency on or before the established deadline" and "[a]ny agency

response to third party comments."  *Id.* §§ 602.32(f)(3), 602.34(c)(4)-(5).  All documents

provided to NACIQI are to be made public.  *Id.* § 602.31(f)(2) (requiring the Secretary to

"make[] all documents provided to [NACIQI] available to the public").

NACIQI then considers the staff analysis and other provided materials and makes its own

recommendation, which it forwards to the SDO, who has the authority to make a decision on

behalf of the Department.  *Id.* § 602.36. The SDO decision may be appealed to the Secretary.  *Id.*

§ 602.37(a).  The record before the SDO and the Secretary includes the third-party written

comments.  *Id.* §§ 602.36(a)(1), 602.367(d).

**B.  The Department's Solicitation**

On January 23, 2018, prior to its formal publication the following day, ED made the

Solicitation available for public viewing through the Federal Register. *See* 83 Fed. Reg. 3335

(Jan. 24, 2018).  In the Solicitation, the Department sought public comment regarding

"accrediting agencies currently undergoing review for purposes of recognition by the U.S.

Secretary of Education."  Two of those reviews are relevant to this case: (1) the "ABA Report," a

compliance report submitted by the ABA, which the Department in September 2016 ordered the

ABA to submit after achieving compliance with the recognition criteria; and (2) the ACICS Application.

With respect to the ABA Report, the Solicitation provides that any submitted comments "must relate to issues identified in the compliance report."  With respect to ACICS, although the Solicitation does specifically limit comments regarding applications for *initial* accreditation, comments "about the renewal of an agency's recognition based on a review of the agency's petition must relate to its compliance" with the recognition criteria.  In respect to both reviews, the Solicitation establishes that this is the "[o]nly" opportunity to submit written material that will "become part of the official record concerning agencies scheduled for review and are considered by the Department and NACIQI in their deliberations."  83 Fed. Reg. 3335-36.

### C.  TCF's Attempts to Receive the Information

The day the Solicitation became public, TCF submitted two FOIA requests to ED with requests for expedited treatment (hereinafter "ACICS FOIA" and "ABA FOIA").  *See* Declaration of Tariq Habash (hereinafter "Habash Decl.") ¶ 11 & Compl. Exhs. B & C.  The FOIA requests were limited and specifically targeted to permit TCF to provide an informed response to the Solicitation, insofar as they sought:

(1) "All documents constituting the Application for Initial Recognition by ACICS that is "currently undergoing review and evaluation" by the Accreditation Group within the Office of Postsecondary Education at the Department," and

(2) "All documents constituting the "American Bar Association compliance report" referenced in the Solicitation and which is "currently undergoing review and evaluation" by the Accreditation Group within the Office of Postsecondary Education at the Department."[3]

---

[3]      As detailed in the ABA FOIA Request, that request also sought a "October 28, 2016 letter from the senior Department official following the June 23, 2016 NACIQI meeting" regarding the ABA (as distinct from the September 22, 2016 letter available at: https://opeweb.ed.gov/aslweb/finalstaffreports.cfm).

*See* Habash Decl. ¶¶ 12-13& Compl. Exhs. B-C.  In these requests, TCF sought—and made explicit—the request for expedited processing.  *See* Compl. Exh. B at 1-3, Exh. C at 1-4.  Both FOIAs also included a detailed statement of the basis for expedited processing and highlighted the need to receive the requested documents in order to provide informed comments in response to the Solicitation.  Pursuant to FOIA, the Department was required to respond to the expedition request within 10 calendar days*, i.e.*, by February 2, 2018. 5 U.S.C. § 552(a)(6)(E)(ii)(I).  On February 6, 2018, having missed the statutory deadline for a response, ED nevertheless informed TCF that it denied the requests for expedition.  *See* Habash Decl. ¶ 17; Compl. Exhs. F & G.

On February 8, 2018, TCF filed this action seeking to enjoin the Department from continuing to withhold the documents necessary to remedy TCF's informational injury and to further enjoin the Department from closing the comment period until a reasonable time after the documents were provided.  That same day, TCF provided a copy of the Complaint to Defendant, via counsel, together with a request to discuss in light of the pending closing of the comment period.  *See* Declaration of Alexander Elson (hereinafter "Elson Decl.") at ¶ 3 & Exh. 1.  When Defendant did not respond, TCF reached out a second time, through counsel, to attempt to discuss the matter.  *Id.* ¶ 4 & Decl. Exh. 1. Defendant did not respond to either communication, *id*. ¶¶ 4-5, and has not provided the requested records, Habash Decl. ¶ 18.

## ARGUMENT

The Department's failure to provide the documents about which it has solicited comment runs afoul of both the Administrative Procedure Act ("APA") and the Freedom of Information Act ("FOIA").  ED's failure to produce the materials in time for public comment not only deprives TCF of information it is lawfully entitled to receive, thus injuring TCF's right to

adequately provide informed comments, but will ultimately taint the entire process regarding ED's recognition, or not, of the accreditors at issue.  Because ED's actions do not comport with the duties imposed on it by law, TCF seeks emergency relief to enjoin ED from (i) continuing to withhold any and all non-exempt records necessary for TCF to submit comments in response to the Solicitation and (ii) closing the comment period before TCF receives such records and has a reasonable amount of time in which to review and comment on them.

The standards for entering a TRO and preliminary injunction are the same.  *See National Football League Management Council v. National Football League Players Assoc.,* No. 17-cv-06761-KPF, 2017 WL 4685113 at *1 (S.D.N.Y. Oct. 17, 2017) (Crotty, J.).  "A party seeking a preliminary injunction must show '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Id.* (quoting *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 35 (2d Cir. 2010)).  The so-called "serious questions" standard "permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Glob. Markets,* 598 F.3d at 35 (explaining further that the moving party "must not only show that there are serious questions going to the merits, but must additionally establish that the balance of hardships tips *decidedly* in its favor") (internal quotation marks omitted)).

## I.   PLAINTIFF HAS STANDING TO CHALLENGE THE DEPARTMENT'S FAILURE TO COMPLY WITH THE HEA COMMENT REQUIREMENTS

TCF meets the requirements for standing under Article III of the Constitution.  The conduct of the Department—through its failure to release the ACICS Application and ABA

Report—have harmed TCF, and this Court can clearly redress that harm.  To meet the minimum requirements for constitutional standing, courts require that a plaintiff demonstrate (1) that the plaintiff has suffered an "injury in fact," meaning an "actual or imminent" and "concrete and particularized harm" to a legally protected interest; (2) a causal connection between the injury and the challenged conduct such that the injury is fairly traceable to the challenged action; and (3) that it is likely, and not speculative, that a favorable decision by a court will redress the injury.  *See, e.g.*, *Gambles v. Sterling Infosystems, Inc.*, 234 F. Supp. 3d 510, 517–19 (S.D.N.Y. 2017) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

As the Supreme Court has explained, a plaintiff "suffers an 'injury in fact' when it fails to obtain information which must be publicly disclosed pursuant to a statute." *FEC v. Akins*, 524 U.S. 11, 21 (1998); *see also Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989) (failure to obtain information subject to disclosure under Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").  At a minimum, a plaintiff has informational standing when it alleges that: (1) it "failed to obtain information that," under its reading of the relevant law, it was "entitled to receive," and (2) where there is no reason to doubt that the information would help plaintiff exercise a statutory right to participate in the public discourse.  *McFarlane v. First Unum Life Ins. Co.*, __F.Supp.3d. __, 2017 WL 3495394 at *7-*8 (S.D.N.Y. Aug. 15, 2017) (citing *Am. Soc. For Prevention of Cruelty to Animals v. Feld Entertainment, Inc.*, 659 F.3d 13, 23 (D.C. Cir. 2011)).  *See also Akins*, 524 U.S. at 21; *Public Citizen*, 491 U.S. at 449; *United to Protect Democracy v. Presidential Advisory Commission on Election Integrity*, No. 17-CV-2016, 2017 WL 6759097 (D.D.C. Dec. 29, 2017) (hereinafter "*Protect Democracy*").[4]  Where the injury giving rise to litigation flows from a failure to disclose

---

[4]        *See also, e.g., Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017) ("An 'informational injury' is a type of intangible injury that can constitute an Article III injury in fact." (citing *Akins*, 524 U.S. at 24));

information as required by statute, "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Spokeo, Inc. v. Robins*, 136 S.Ct 1540, 1549 (2016).[5]

*First,* TCF has alleged that it "failed to obtain information that," under its reading of the relevant law, it was entitled to receive. As discussed *infra*, and as alleged in the Complaint, *see, e.g.* Compl. ¶¶ 12, 29-30 & 73, the HEA requires the Department to seek third-party comment on an agency's "performance" as an accreditor as part of the Department's evaluation of accreditors during the recognition process. *See* HEA § 496(n), 20 U.S.C. § 1099b(n).  In this case, TCF has alleged that the Department failed to provide two distinct pieces of information: the ABA Report and the ACICS Application.

There can be no serious question, as it has alleged, that TCF is entitled to have access to the ABA Report prior to the close of the comment period.  The Department acknowledged in the Solicitation that it is "required" to solicit comments.  83 Fed. Reg. 3335 (Jan. 24, 2018); *see also* Compl. ¶ 21.  The Department has also required that "comments about an agency's recognition after review of a compliance report *must relate to issues identified in the compliance report*[.]" *Id.* (emphasis added)*; see also* Compl. ¶ 30.  Because, at a minimum, the HEA and the Secretary

---

*Waterkeeper Alliance v. Environmental Protection Agency*, 853 F.3d 527, 533 (D.C. Cir. 2017) (finding a cognizable informational injury under the Emergency Planning and Community Right-to-Know Act); *Friends of Animals v. Jewell*, 824 F.3d 1033, 1042 (D.C. Cir. 2016) (same, under the Endangered Species Act); *Am. Soc. for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 22 (D.C. Cir. 2011) ("[A] denial of access to information can work an 'injury in fact' for standing purposes, at least where a statute (on the claimants' reading) requires that the information be publicly disclosed and there is no reason to doubt their claim that the information would help them." (some internal quotation marks omitted)); *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 545–46 (6th Cir. 2004) ("[T]he injury alleged is not that the defendants are merely failing to obey the law, it is that they are disobeying the law in failing to provide information that the plaintiffs desire and allegedly need. This is all that plaintiffs should have to allege to demonstrate informational standing where Congress has provided a broad right of action to vindicate that informational right."); 15 James W. Moore et al., *Moore's Federal Practice* § 101.40 (3d ed. 2015) ("A plaintiff may be injured by a defendant's failure or refusal to disclose information that it is required by law to disclose and the disclosure of which would be helpful to the plaintiff.").

[5]     The asserted injury need not be tangible, and the Supreme Court has "confirmed . . . that intangible injuries can nevertheless be concrete" for purposes of standing. *Spokeo*, 136 S.Ct. at 1549.  *See also, e.g.*, *Gambles*, 234 F. Supp. 3d at 517 (highlighting that informational standing is precisely the type of intangible injury that the Supreme Court has permitted for purposes of Article III standing).

have created a mandatory condition for TCF to meet in order to respond to the comment, TCF has "espoused a view of the law under which the Defendant . . . is obligated to disclose certain information that [TCF] has a right to receive." *McFarlane*, __ F. Supp 3d. at __, 2017 WL 3495394 at *8 (quoting *Am. Soc. For Prevention of Cruelty to Animals*, 659 F.3d at 23).

TCF has similarly alleged that it is entitled to receive the ACICS Application. *See, e.g.* Compl. ¶ 29. As discussed *infra*, because the ACICS Application "must consist of evidence" that ACICS complies with the recognition criteria and because the public comment period here specifically relates to ACICS's "compliance with the criteria for recognition," 34 C.F.R. § 602.32(a), TCF has "espoused a view" of the governing law that *requires* the application to be made available prior to the deadline for third-parties to comment. Put simply, under the HEA and the Department's regulations thereunder, TCF cannot fully and effectively comment on ACICS's compliance with the recognition criteria without having access to the evidence that ACICS believes establishes that it complies with those criteria, as ACICS is required to submit. 34 C.F.R. § 602.31(a)(2). For that reason, the HEA and the Department's regulations *require* the Department to make the ACICS Application available to TCF in a reasonable amount of time before the close of the comment period.

*Second,* TCF has alleged that the information sought will help TCF exercise its statutory right to participate in the public discourse. *See Public Citizen*, 491 U.S. at 449 (holding that, where an agency denies access to information that could enable a third-party to "participate more effectively" in a public process, the third-party suffers "a sufficiently distinct injury to provide standing to sue"). "[T]here is no reason to doubt [plaintiff's] [informational] standing" when it claims that "information provided [under the relevant statute] helps it meaningfully participate in

the [regulatory] process, as well as engage in related advocacy efforts."  *Friends of Animals*, 824 F.3d at 1041.

As an initial matter, TCF is a non-profit organization that is "primarily engaged in disseminating information to the public."  Compl. ¶ 10; Habash Decl. ¶ 3.  Plaintiff has provided comments to the Department and NACIQI on matters regarding the performance of specific accrediting agencies, including ACICS.  *Id.*; Habash Decl. ¶¶ 7-8.  Akin to the plaintiffs in *American Oversight*, TCF devotes substantial resources to ensuring that accrediting agencies comply with the standards for recognition and educating the public and engaging in advocacy to advance that objective.  Compl. ¶ 12; Habash Decl. ¶ 3.  Moreover, "[h]ad TCF already received the information to which they were entitled, they would have sought to educate the public on the implications of the information and would have organized advocacy strategies to respond appropriately to the materials."  *Id.*; Habash Decl. ¶ 19.

Accordingly, as discussed *infra* and as alleged in the Complaint, ED's failure to disclose certain documents, as it is required to do, has harmed "TCF's informed participation in the political process."  Compl. ¶ 71. Under HEA § 496(n)(1), the Department is "required," to solicit comments from third-parties such as TCF, including about an accrediting "agency's compliance with the criteria for recognition." 34 C.F.R. § 602.32.  In this context, where the *entire* purpose of the public comment right is to engage the public in discourse about—and give the Department the benefit of public expertise with—accrediting agencies and their compliance with the standards, there is no reason to doubt that the information would help TCF exercise its statutory right to participate in the public discourse.  Thus, as with *Protect Democracy*, the very purpose of the disclosure requirement here is to strengthen the government's discharge of its duties under

the statute. *Protect Democracy*, 2017 WL 6759097 at \*5.[6]   In that case, plaintiffs alleged that

the purpose of the disclosure provision of the Paperwork Reduction Act was to "improve the

quality and use of Federal information to strengthen … openness in Government and society."

*Id.*  Here, the very purpose of the HEA's comment requirement—*i.e.*, the source of the disclosure

requirement—is to enable the Department to conduct its review of the accrediting agencies.[7]

TCF has thus adequately pled standing.

## II.    TCF HAS ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE MERITS OF BOTH ITS APA AND FOIA CLAIMS.

For the reasons set forth below, with respect to both its APA and FOIA claims, TCF has

established a likelihood of success on the merits or, at minimum, "sufficiently serious questions

going to the merits to make them a fair ground for litigation." *Citigroup Glob. Markets,* 598 F.3d

at 35.

### a.    With respect to its APA claim, TCF has established a likelihood of success or, at minimum, sufficiently serious questions going to the merits.

In a challenge to agency action or inaction under the APA,[8] a reviewing court shall

"decide all relevant questions of law, interpret constitutional and statutory provisions, and

---

[6]     *Protect Democracy* is also instructive in its distinction between informational injuries and the infringement of a "procedural right." *Protect Democracy*, 2017 WL 6759097 at \*6-7.  Noting that the crux of plaintiff's injury was the "deprivation of *information* to which they were entitled," *id.* at \*6, the fact that a purely procedural injury may also exist (insofar as the "right to information may be based on a statute tied to notice and comment procedures," *id.* at \*7), does not obviate the informational injury suffered as a result of the defendant's conduct. *See also, e.g.*, *Dolan v. Select Portfolio Servicing*, No. 03-CV-3285 PKC AKT, 2016 WL 4099109, at \*4 (E.D.N.Y. Aug. 2, 2016) (finding it "significant[]" that "both *Akins* and *Public Citizen* involved statutory rights intended to protect and promote public interests that, by their nature, are intangible and diffuse, and would be rendered wholly unenforceable were intangible injury, or bare procedural violations, categorically insufficient to confer standing.").

[7]     This is far from an academic debate.  As TCF has alleged in the Complaint, third-party comments have previously enabled Department staff to discharge duties to analyze accreditor standards.  *See* Compl. ¶¶ 37-38 & Exhibit A.

[8]     Although TCF is challenging the Department's conduct under APA, insofar as the Department has failed to make available the documents to be disclosed in order to make effective the required comment period, TCF has separately challenged, under the FOIA, the Department's responses to TCF's FOIA requests. In this regard, the APA claim is necessary both (1) because of the Department's arbitrary, capricious, and otherwise unlawful conduct under the HEA, and (2) because FOIA, on its own, may inadequately remedy plaintiff's injuries, insofar as TCF is seeking

13

determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706.  If a court determines that an agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," then it "shall . . . hold unlawful and set aside [such] agency action." *Id.* § 706(2).  By denying access to essential materials and information prior to the close of the comment period, ED's conduct is arbitrary, capricious, and otherwise not in accordance with law.

As noted above, the HEA requires the Department to solicit third-party information concerning an accrediting agency as part of the Department's evaluation of that agency.  HEA § 496(n)(1), 20 U.S.C § 1099b(n)(1).  Interpreting and applying this provision, the Department has stated that third-parties such as TCF are entitled "to comment on the agency's compliance with the criteria for recognition."  34 C.F.R. § 602.32(a).  Because the withheld information at issue in this case relates to accrediting agencies at different stages of the recognition process, we address the issues in turn.

1. *TCF's likelihood of success regarding the ABA Report*

TCF's right to a copy of the ABA Report prior to the close of the comment period is simple and absolute.  The Department has conceded—as it must—that the HEA's comment period is "required" by the HEA.  83 Fed. Reg. 3335 (Jan. 24, 2018).  The Department has also placed a clear and unambiguous limitation on third-party comments regarding the ABA Report, *i.e.*, that comments "must relate to issues identified in the compliance report and the criteria for recognition cited in the senior Department official's letter that requested the report, or in the Secretary's appeal decision, if any." *Id.* at 3336.  In order to provide comments that must "relate

---

an extension of the comment period.  These are two separate and distinct injuries.  Moreover, although this court's broad equitable authority under FOIA permits the court to extend the statutorily required comment, *in the alternative, see* Fed. R. Civ. P. 8(d), if FOIA does not permit the sort of equitable relief necessary to redress TCF's injury, review under the APA is appropriate even absent the alleged informational injury.

to issues identified in the compliance report," TCF must have access to the report before the close of the comment period.

Apart from the Department's express requirement vis a vis comments on the ABA Report, the Department's decision ordering the submission of a compliance report makes clear that any effective comments must consider the report itself.  In September 2016, the SDO ordered the ABA to "come into compliance within 12 months" with certain criteria[9] "and submit a compliance report … that demonstrates [ABA's] compliance."[10]  The ABA Report must therefore detail how the ABA has attempted to cure its non-compliance.  Without access to the ABA Report, TCF has no way to provide effective comment on the ABA's demonstration of compliance with the standards.

2.  *TCF's likelihood of success regarding the ACICS Application*

Accrediting agencies applying for initial recognition "must submit a written application to the Secretary" that "consist[s] of," *inter alia*, "[e]vidence, including documentation, that the agency complies with the criteria for recognition."  34 C.F.R. § 602.31(a).

With respect to ACICS, the application for initial recognition is the single most important piece of evidence that will allow TCF to "comment on [ACICS's] compliance with the criteria for recognition."  *Id.* § 602.32(a).  Because ACICS is not applying for renewal but rather for "initial recognition," the application presumably attempts to show the steps it has taken since

---

[9]      Department staff found the ABA non-compliant with five criteria, including: the adequacy of its administrative staff (34 C.F.R. § 602.15(a)(1)); the ability of the ABA to evaluate distance education (34 C.F.R. § 602.15(a)(2)); the use of academic and administrative personnel on site visit teams (34 C.F.R. § 602.15(a)(3)); the effectiveness of its standards for measuring program length and objectives (34 C.F.R. § 602.16(a)(1)(viii)); and the effectiveness of its studying the ABA's assessment of educational quality (34 C.F.R. § 602.17(b)).  *See* U.S. Department of Education Final Staff Report to the Senior Department Official on Recognition Compliance Issues regarding ABA *available within* https://opeweb.ed.gov/aslweb/finalstaffreports.cfm (within the NACIQI Meeting materials for June 23, 2016).

[10]      Ltr. From E. Vadhera to B. Currier (Sept. 22, 2016) *available within* https://opeweb.ed.gov/aslweb/finalstaffreports.cfm (within the NACIQI Meeting materials for June 23, 2016).

15

December 2016 (when the Department revoked its recognition, *see generally* Complaint ¶¶ 36-37)) to come into compliance with the regulatory criteria outlined in Subpart B of 34 C.F.R. Part 602. Some examples of information required to be in the application include:

- ACICS's application must contain evidence that it has standards that "effectively address the quality" of institutions or programs in critical areas such as "success with respect to student achievement." 34 C.F.R. §§ 602.16(a). With regard to student achievement, the Department found in 2016 that "not only was this one of the most significant areas of deficiency identified, but despite ACICS's assertions of progress in other areas, its progress in developing and effectively implementing student achievement standards was entirely lacking or incoherent."[11] Moreover, as the Secretary explained, the record reflected "not only a failure to effectively apply these standards in the past, but lack of sufficient progress in developing and effectively implementing a set of standards that could meet the recognition criteria at some point in the future, much less within 12 months." Secretary's Decision at 7. Without reviewing the evidence that ACICS has submitted regarding its student achievement standards, TCF cannot comment on ACICS's progress over the last year with respect to this most critical function.

- ACICS's application must also demonstrate that it has an effective set of monitoring and evaluation approaches. 34 C.F.R. § 602.19(b). The Department found in 2016 that ACICS's monitoring regime was "insufficient to deter widespread misconduct regarding placement, recruiting and admissions" and that it was "unlikely" ACICS could remedy this deficiency in 12 months. Secretary's Decision at 7. Without the application, TCF does not have the information necessary to comment on ACICS's progress with respect to monitoring.

- Pursuant to 34 C.F.R. § 602.20, ACICS must demonstrate that it immediately initiates an adverse action against an institution when it is not in compliance with the agency's standards. In 2016, the Department and NACIQI could not find evidence that ACICS took the required action against institutions "even when faced with reliable information about violations of its standards from sources including state and federal agencies." Secretary's Decision at 7. Indeed, as the Secretary found, "ACICS's past policy and practice allowed the accrediting of noncompliant institutions." *Id.* The Department concluded that ACICS "had not made sufficient progress to enable it to demonstrate effective implementation of the policies within 12 months." *Id.* Without the application, TCF cannot comment on ACICS's efforts to improve its enforcement standards.

- ACICS's application must also provide a detailed narrative on staffing and financial resources under 34 C.F.R. § 602.15(a)(1). The 2016 ED Staff Report found that

---

[11]     *In the Matter of Accrediting Council for Independent Colleges and Schools*, Docket No. 16-44-O, Decision of the Secretary 6 (Dec. 12, 2016) (hereinafter "Secretary's Decision") *available at*: http://www2.ed.gov/documents/acics/final-acics-decision.pdf

Case 1:18-cv-01128-PAC   Document 15   Filed 02/14/18   Page 19 of 26

ACICS staff was ineffective at monitoring institutions and that its Board of Directors was made up in large part of representatives of its member schools that were under fraud investigations. Staff Report at 14, 18. Without reviewing the evidence that ACICS has submitted in this regard—*e.g.*, staff hiring, training, effectiveness—TCF cannot comment on the steps ACICS has taken to provide adequate staffing on site visits and reviews.

- ACICS's application must further provide evidence of its administration and fiscal responsibility, including its "clear and effective controls against conflicts of interests, or the appearance of conflicts of interests." 34 C.F.R. § 602.15(a)(6). The 2016 Staff Report noted that, due to the makeup of its Board, ACICS was "made aware of the appearance of inappropriate self-interest and a lack of competency." Compl. Exh. A at 6. The Staff Report further noted that ACICS would need to provide documentation on how a proposed ethics board "will prevent the ethical issues faced by ACICS over the past several years." *Id.* In order to establish that ACICS is in compliance with the criteria, the application must contain evidence setting forth for how ACICS believes it has fixed these "ethical issues." *Id.*[12] Without reviewing that evidence, TCF cannot comment on ACICS's efforts, if any, to cure these deficiencies.

In order for the statutorily required comment period to have any meaning at all, the law requires ED to disclose the ACICS Application, without which TCF will not be able to provide informed comments that become a part of the record on which the Department's decision regarding ACICS is based.

By denying access to the ABA Report and ACICS Application, ED's conduct is arbitrary, capricious, and otherwise not in accordance with law. *Cf. United States Lines, Inc. v. Federal Maritime Commission,* 584 F.2d 519, 534 (D.C. Cir. 1978) (requiring information "identified by the agency as relevant to the proceeding to be disclosed to the parties for adversarial comment

---

[12]   Based on what little information is public, and by way of example only, TCF is concerned that ACICS may not have adequately addressed these conflicts. ACICS's website indicates that it is chaired by Elizabeth Guinan, who, also according to its website, was previously the President of the Art Institute of Charlotte, an institution owned—until October 2017—by the Education Management Corporation ("EDMC"). *See* http://www.acics.org/contact/content.aspx?id=2272 & https://www.artinstitutes.edu/about. In November 2015, the U.S. Department of Justice announced a "landmark," $95.5 million settlement with EDMC to resolve allegations that EDMC had been committing fraud with respect to the operation of its institutions of higher education. *See* U.S. Department of Justice, Press Release: For-Profit College Company to Pay $95.5 Million to Settle Claims of Illegal Recruiting, Consumer Fraud and Other Violations (Nov. 16, 2015) *available at:* https://www.justice.gov/opa/pr/profit-college-company-pay-955-million-settle-claims-illegal-recruiting-consumer-fraud-and

[in order to] ensure that parties to agency proceedings are afforded the opportunities guaranteed by statute meaningfully to participate in those proceedings").

Notably, in the context of the notice and comment process during informal rulemaking under the APA, courts have routinely recognized that critical information must be provided in order for public comment to be informed and meaningful.  *See, e.g., Allina Health Servs. v. Sebelius,* 746 F.3d 1102, 1110 (D.C. Cir. 2014) ("[W]e have held for many years that an agency's failure to disclose *critical* material, on which it relies, deprives commenters of a right under § 553 "to participate in rulemaking.") (emphasis in original)*; Am. Med. Ass'n,* 57 F.3d at 1133 ("Given [defendant's] reliance on these non-classified, non-protected documents, its failure to publicly disclose them during the notice-and-comment period appears to constitute a procedural error under the APA. To fulfill its obligation to provide adequate notice, an agency must 'make available to the public, in a form that allows for meaningful comment, the data the agency used to develop [its] proposed rule.'") (quoting *Chamber of Commerce v. SEC.,* 443 F.3d 890, 899 (D.C. Cir. 2006)).  The same logic applies here, *i.e.*, in order for TCF to "meaningfully participate in th[e] proceedings," ED must satisfy its obligation to provide the requested records.

### b.  With respect to its FOIA claims, TCF has established a likelihood of success or, at minimum, sufficiently serious questions going to the merits.

The very "purpose" of FOIA is "to pierce the veil of administrative secrecy and open agency action to the light of public scrutiny." *Department of the Air Force v. Rose*, 425 U.S. 352, 361 (1976).  "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary and capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).  At all times courts must bear in mind that FOIA

mandates a "strong presumption in favor of disclosure…." *U.S. Dep't of State v. Ray,* 502 U.S. 164, 173, (1991).

There can be little dispute that TCF's FOIA Requests should ultimately be granted. Because the ACICS Application and ABA Report must be made "available to the public" when the documents are provided to NACIQI, 34 C.F.R. § 602.31(f)(2), there is no basis upon which to withhold them.  At issue here, then, is whether the Department's denial of Plaintiff's request to expedite processing of the FOIA requests—which was issued four days after the statutory deadline for such responses—was wrongly decided.

Under FOIA, the Department's "action to deny … a request for expedited processing … shall be subject to judicial review." 5 U.S.C § 552(a)(6)(E)(iii).  Moreover, FOIA "authorizes courts to review an agency's expedited request determination, just as it authorizes courts to review an agency's standard request determination, and that authority extends until the agency has made *complete* disclosure of the requested material."  *NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Hous. & Urban Dev.,* No. 07CIV. 3378(GEL), 2007 WL 4233008, at *6 (S.D.N.Y. Nov. 30, 2007) (emphasis in original).  Because ED has not provided a "complete" response to the FOIA Requests, this court has jurisdiction to consider the entirety of ED's responses.[13]

Expedited processing of a FOIA request is warranted upon a demonstration of "compelling need."  5 U.S.C. § 552(a)(6)(E)(v).  With respect to a request made by a person

---

[13]       "If courts declined to review the merits of an agency's FOIA determination simply because the agency eventually made some disclosure, then every time an agency eventually complied with an expedited FOIA request-even if that compliance was woefully inadequate-the requester would be required to return to the agency to pursue administrative appeals, thereby dividing the dispute over a single FOIA request into a 'piecemeal' series of disputes pending simultaneously before both the federal court and the agency, the exact result defendant claims it is trying to avoid." *Id.* at *7.  *See also Edmonds v. FBI,* 417 F.3d 1319, 1323-24 (D.C. Cir. 2005) (affirming district court's "vindicat[ion]" of FOIA requester's "statutory right" to expedited processing by providing her with "full relief on the merits of her claim").

"primarily engaged in disseminating information," a compelling need exists when there is

"urgency to inform the public concerning actual or alleged Federal Government activity." *Id.*

Courts consider the following factors when determining whether an entity with a FOIA request

has demonstrated a "compelling need": (1) "whether the request concerns a matter of exigency to

the American public; (2) whether the consequences of delaying a response would compromise a

significant recognized interest; and (3) whether the request concerns federal government

activity." *Bloomberg, L.P. v. Unities States Food & Drug Amin.,* 500 F. Supp. 2d 371, 377

(S.D.N.Y. 2007).

Each of these factors is satisfied here. *First,* accrediting agencies serve as the

"gatekeepers" to billions of taxpayer dollars, and recent failures have had devastating

consequences to taxpayers and students alike.  For example, ACICS's conduct overseeing

Corinthian Colleges, Inc. and ITT Technical Institutes was widely reported.[14]  Whether ACICS

should once again be recognized is a matter of critical importance to taxpayers as well as

thousands of students across the country that would remain in ACICS accredited schools.

*Second*, ED's failure to provide the information compromises TCF's ability to participate in the

statutorily required public comment process.  *Third*, the accreditation agency approval process is

clearly a federal government activity.  *See, e.g.*, *id.* at *Bloomberg,* 500 F. Supp. 2d at 377

(holding that information provided to a government agency in response to an inquiry initiated by

the agency clearly relates to federal government activity).

---

[14]     Michael Hiltzik, Finally, the Feds Move to Fire an Incompetent Watchdog Over For-profit Colleges, Los Angeles Times (June 15, 2016) *available at*: http://www.latimes.com/business/hiltzik/la-fi-hiltzik-for-profit-schools-20160615-snap-story.html; Andrea Fuller and Douglas Belkin, The Watchdogs of College Education Rarely Bite, The Wall Street Journal (June 17, 2015) *available at*:
http://www.wsj.com/articles/the-watchdogs-of-college-education-rarely-bite-1434594602#:YbZO0oyVURG5xA; Kevin Carey, For-Profit College Fiasco: Why a Watchdog Needs a Watchdog, The New York Times (June 21, 2016) *available at*: https://www.nytimes.com/2016/06/22/upshot/for-profit-college-fiasco-why-a-watchdog-needs-a-watchdog.html.

### III.   PLAINTIFF WILL SUFFER IRREPERABLE HARM ABSENT EMERGENCY RELIEF

"[W]here an obligation to disclose exists, "plaintiffs may suffer irreparable harm if they are denied access to information that is highly relevant to an ongoing public debate." *Lawyers' Comm. For Civil Rights Under Law v. Presidential Advisory Comm'n on Election Integrity,* No. 17-cv-1354, 2017 WL 3028832, at \*9 (D.D.C. July 18, 2017).  Courts have consistently held that urgency can exist *solely* due to deadlines imposed by matters of public policy or public discourse.  *Id.  See also, e.g.*, *Leadership Conf. on Civil Rights v. Gonzales*, 404 F.Supp.2d 246, 260 (D.D.C. 2005) (noting the urgency of plaintiff's request given "the upcoming expiration of the special provisions of the Voting Rights Act of 2007").

In this case, timing is of the essence. The Department unilaterally established a deadline for public comment that expires on February 16, 2018, and this comment period is the "[o]nly" opportunity to provide "written material [to] . . . become part of the official record" concerning the review of accrediting agencies. 83 Fed. Reg. 3335 (Jan. 24, 2018).  Absent emergency relief, therefore, TCF will be not only deprived access to the information it is entitled to obtain but will also be effectively barred from meaningful public engagement, as Congress envisioned.  *See Protect Democracy*, 2017 WL 6759097 at \*6 (noting that the deprivation of information is an injury separate and distinct from an injury resulting from the collateral procedural consequences resulting from the information deprivation).

### IV.   THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN FAVOR OF GRANTING A TEMPORARY RESTRAINING ORDER

The balance of hardships in this case tips decidedly in TCF's favor.  As explained above and as alleged in the Complaint, ED's refusal to provide the requested applications has denied, without cause or justification, TCF from information to which it is entitled and has effectively

barred TCF from participation in the public process, which is central to its mission.  The harm to

TCF, therefore, is substantial.  *Lawyers' Comm. for Civil Rights*, No. 17-cv-1354, 2017 WL

3028832, at *9 ("[P]laintiffs may suffer irreparable harm if they are denied access to information

that is highly relevant to an ongoing public debate.").

The harm is compounded by the fact that public comment has, at least in recent years,

been a vital part of this process.  When then-Secretary John King terminated ACICS's federal

recognition on December. 12, 2016 for "pervasive noncompliance" with multiple regulatory

requirements, his decision cited the Staff Report which, in turn, stated that "the Department

received approximately 40 written third-party comments" which "raised serious concerns

regarding the accrediting activities of ACICS" and which were "used to identify several of the

issues listed in the 'Issues or Problem' section of this analysis."  *See* Compl. ¶ 37.  By denying

access to the requested information and a reasonable time in which to review and comment on it,

Plaintiff is effectively barred from participation in this process.

 By contrast, the relief sought by TCF is narrow, reasonable, and poses almost no burden

or harm on the Department.  Plaintiff seeks only a copy of the ACICS Application and the ABA

Report, both of which must be provided to NACIQI and made public in the months to come.

Producing these two applications now will not require the Department to conduct extensive

searches.  Presumably, the documents could be provided to Plaintiff in a manner of minutes.

Finally, the Department is solely responsible for creating the immediacy at issue, and the

record contains no justification for it. According to the Solicitation, the extremely short window

for comment is not tied to any upcoming deadline.  As the Department explained, while "[t]hese

accrediting agencies will be on the agenda for the Spring 2018 [NACIQI] meeting," the actual

date of that meeting "has not been determined" and "will be announced in a separate Federal

Register notice." 83 Fed. Reg. 3335 (Jan. 24, 2018).  Accordingly, the record is entirely void of

any justification for setting such a short comment period, especially one that, because it is shorter

than twenty-days, denies parties the ability to obtain (let alone respond) to any documents

received in response to FOIA requests.

## V.     THE PUBLIC INTEREST WILL BE SERVED BY A TEMPORARY RESTRAINING ORDER

The emergency relief requested here would advance the public interest in several

respects.  The comment provisions serve a substantial public interest by allowing the public to be

informed and have a meaningful voice *before* the federal government makes decisions.  Indeed,

there is a "general public interest in open and accountable agency decision-making." *Cresote*

*Council v. Johnson,* 555 F. Supp. 2d 36, 40 (D.D.C. 2008); *see also N. Mariana Islands v.*

*United States,* 686 F. Supp. 2d 7, 21 (D.D.C 2009) ("The public interest is served when

administrative agencies comply with their obligations under the APA.").

The HEA promotes a similar public purpose with respect to the approval of accrediting

agencies.  As noted *supra*, accrediting agencies serve as a gatekeeper of federal funds and the

public therefore has a tremendous stake in ensuring that accreditors are in compliance with

government standards.  For example, as the Government Accountability Office has noted in

2017: "[r]ecent school closures have displaced tens of thousands of students and resulted in

hundreds of millions of dollars in financial losses for the federal government. Policymakers and

other key stakeholders have raised questions about how effectively the U.S. accreditation system

ensures academic quality at schools and protects students' and taxpayers' investment in higher

education."[15]

---

[15]     Government Accountability Office, GAO-18-5, Expert Views of U.S. Accreditation at 2(Dec. 2017) *available at:* https://www.gao.gov/assets/690/689171.pdf.  As that GAO report highlights, the closure of ITT Technical Institutes in September 2016 came as a direct result of the Department's "increased financial oversight

## CONCLUSION

For the foregoing reasons, TCF respectfully requests that this Court issue a temporary restraining order and/or preliminary injunction enjoining the Department from continuing to withhold the ACICS Application and ABA Report.  TCF further requests that the Court enjoin the Department from ending the comment period, currently set to close on February 16, 2018, until a reasonable time after release of those documents.

Respectfully Submitted,

/s *Alexander S. Elson*
Alexander S. Elson* (N.Y. Bar 4809976)
National Student Legal Defense Network
1440 G Street, N.W.
Washington, D.C. 20005
alex@nsldn.org
(202) 734-7495

*Counsel for The Century Foundation*

*Member of New York Bar only; practicing in the District of Columbia under supervision of members of the D.C. Bar while D.C. Bar application is pending.

Dated:  February 13, 2018

---

measures due," in part, "to significant concerns about the company's non-compliance with its accreditors standards." The GAO report also notes that ITT received approximately $580 million in revenue from the federal government in 2015, of a total revenue of approximately $850 million.

24