UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

THE CENTURY FOUNDATION,

                *Plaintiff*,

v.

BETSY DEVOS, in her official capacity, and
the UNITED STATES DEPARTMENT OF
EDUCATION,

                *Defendants.*

------------------------------------------------------------X

Case No.:18-cv-1128(PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff, The Century Foundation ("TCF"), moves for a Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI") against the United States Department of Education ("Department"), seeking to (1) compel the Department to expedite its Freedom of Information Act ("FOIA") request for documents that TCF believes are necessary for it to comment on the Department's upcoming decision to grant official recognition to certain higher education accrediting agencies, and (2) extend the notice and comment period, which the Department scheduled to end on February 16, 2018, until 21 days after the documents have been produced. Dkt. No. 9. Upon holding a hearing and considering the arguments, the Court hereby **GRANTS** a TRO, and defers decision on a PI until further argument by the parties at another hearing in one week's time (or at a later time if both parties consent).

## BACKGROUND

Any institution participating in the Title IV student financial assistance programs must be accredited by an accrediting agency "recognized" by the Secretary of the Department of

Education to be a reliable authority as to the quality of education or training being offered. *See* 20 U.S.C. §§ 1001, 1099b. The Department does not accredit institutions of higher education. Rather, as required by Congress, *see* 20 U.S.C. § 1099b(o), the Department has established a process for accrediting agencies to apply for recognition, has set standards governing agency recognition, and has developed a process for ongoing monitoring of accrediting agencies. *See generally* 34 C.F.R. Part 602.

By statute, the Secretary is required to engage in "solicitation of third-party information concerning the performance of the accrediting agency or association." 20 U.S.C. § 1099b(n)(1)(A). Further, federal regulation enacted pursuant to this statute requires that the "Department staff publish[] a notice of the agency's application or report in the Federal Register inviting the public to comment on the agency's compliance with the criteria for recognition and establish[] a deadline for receipt of public comment." 34 C.F.R. § 602.32(a). Once Department staff complete their evaluation, which includes a "[r]eview of the public comments," *id.* § 602.32(b)(2), it "prepares a written draft analysis" and sends the draft, "including all third-party comments the Department received by the established deadline" to the accrediting agency under review so that it may respond prior to the staff finalizing its analysis report and recommendation to a "Senior Department Official" or "SDO." *Id.* §§ 602.32(b)(3)-(5), (f)(1)-(5). The final staff analysis is also provided to the National Advisory Committee on Institutional Quality and Integrity ("NACIQI"), a federal advisory committee subject to the Federal Advisory Committee Act, including "written third-party comments the Department received about the agency on or before the established deadline." *Id.* §§ 602.31(f)(3), 602.34(c)(4)-(5). All documents provided to NACIQI are to be made available to the public. *Id.* § 602.31(f)(2). NACIQI then makes its own recommendation, which it forwards to the SDO, who has the

authority to make a decision on behalf of the Department. *Id.* § 602.36.

On January 24, 2018, the Department published a notice in the Federal Register. *See* 83 Fed. Reg. 3335 (Jan. 24, 2018) (hereinafter the "Solicitation"). The Solicitation notified the public that one agency, the Accrediting Council for Independent Colleges and Schools ("ACICS"), submitted an application for initial recognition, and seven other agencies applied for renewal of recognition. It also notified the public that the American Bar Association ("ABA") and three other agencies submitted compliance reports previously ordered by the Department. The Solicitation called for third-party comments "concerning the performance of accrediting agencies" as required by statute and regulation. It also explained that "[t]hese accrediting agencies will be on the agenda for the Spring 2018 National Advisory Committee on Institutional Quality and Integrity meeting. The meeting date has not been determined, but will be announced in a separate Federal Register notice."

The Solicitation stated that written comments "must be received" by February 16, 2018, and it further specified that "[o]nly written material submitted by the deadline to the email address listed in this notice, and in accordance with these instructions, become part of the official record concerning agencies scheduled for review and are considered by the Department and NACIQI in their deliberations." Regarding the compliance reports in particular, the Solicitation stated that "[c]omments about an agency's recognition after review of a compliance report must relate to issues identified in the compliance report." It concluded, "A later Federal Register Notice will describe how to register to provide oral comments at the meeting about the recognition of a specific accrediting agency or State approval agency."

The day the Solicitation became public, TCF submitted two FOIA requests to the Department, asking for disclosure of the application submitted by ACICS and the compliance

3

report submitted by the ABA. *See* Habash Decl. ¶ 11; Compl. Exs. B, C. TCF, a nonpartisan, non-profit section 501(c)(3) organization, devotes substantial resources to ensuring that accrediting agencies comply with the standards for recognition. *See* Habash Decl. ¶ 3. TCF intended to use the application and compliance report to provide an informed response to the Solicitation. As such, TCF also requested expedited processing in light of the looming deadline for written third-party comments. *See* Compl. Ex. B at 1-3, Ex. C at 1-4. On February 6, 2018, the Department informed TCF that it denied the requests for expedition. *See* Habash Decl. ¶ 17; Compl. Exs. F & G. TCF then initiated this action.

On February 8, 2018, TCF filed a Complaint against the Department, seeking declaratory and injunctive relief. Upon filing the complaint, TCF e-mailed the Department with a courtesy copy of the Complaint and informed it that TCF was preparing to file for emergency relief unless a resolution could be reached. Elson Decl. Ex. 1. The Department declined to respond. On February 12, 2018, TCF again reach out to the Department but received no response. *Id.* On February 13, 2018, TCF moved for a temporary restraining order ("TRO") and preliminary injunction ("PI"), and the Court issued an order to show cause. Dkts. 14-15. Today, two days later, both parties appeared at a hearing, and the Court is prepared to rule on a TRO.

## DISCUSSION

Federal Rule of Civil Procedure 65(a)(1) provides that a "court may issue a preliminary injunction only on notice to the adverse party." Although the Rule does not specify when notice must be given, Rule 6(c) states that any motion must be served, along with notice of the hearing thereof, at least 14 days before the time set for the hearing. Fed. R. Civ. P. 6(c). Although the Court has discretion to modify this period when the urgency that is characteristic of the preliminary-injunction context warrants it, *see Anderson v. Davila*, 125 F.3d 148, 156 (3d Cir.

1997), the Court declines to exercise that discretion here, where the Department asserts that its operations will be impaired by a long delay in the recognition process and the Court believes that further argument and evidence regarding the Department's processes would be helpful. Hence, the Court finds it appropriate to grant only a TRO at this stage. Nevertheless, the Court exercises its discretion to schedule the next hearing for February 22, 2018, which is only 9 days from the date the motion was filed but 14 days from the date TCF provided notice of the Complaint and its intent to seek emergency relief. Per Rule 65(b)(2), the TRO will expire 14 days from today, on March 1, 2018, barring the grant or denial of a preliminary injunction before that date.

"It is well-established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, No. 17-cv-6761, 2017 WL 4685113, at *1 (S.D.N.Y. Oct. 17, 2017). A party seeking a preliminary injunction must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

The Court finds that TCF is entitled to a TRO prohibiting the Department from enforcing the deadline to submit written comments concerning ACICS and the ABA until the Court is in a position to rule on the PI. Specifically, at least with regard to its Administrative Procedure Act ("APA") claim seeking to extend the comment period, TCF has demonstrated serious questions going to the merits to make them a fair ground for litigation, irreparable harm, and a balance of hardships tipping decidedly in its favor. At this time, the Court expresses no opinion on the merits of TCF's claim that the Department also violated FOIA by declining the requests for

expedition.

First, TCF has established "serious questions going to the merits to make them a fair ground for litigation." *Citigroup Global Mkts.*, 598 F.3d at 35. In a challenge to agency action or inaction under the APA, a reviewing court shall "determine all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of terms of an agency action." 5 U.S.C. § 706. If a court determines that an agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," then it "shall . . . hold unlawful and set aside [such] agency action." *Id.* § 706(2). TCF argues that the Department's conduct is arbitrary and capricious because it has denied public access to essential materials and information prior to the close of the comment period, thus depriving TCF and other organizations of the ability to meaningfully comment. The Court believes that this argument raises sufficiently serious questions.

The procedure outlined by statute and regulation for the Department to recognize accrediting agencies seems analogous to the procedure for informal rulemaking authorized by Section 553(c) of the APA. That section provides that "the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." 5 U.S.C. § 553(c). Some courts, including the Second Circuit, have interpreted § 553 to require a meaningful opportunity to participate. *See, e.g., National Black Media Coalition v. FCC*, 791 F.2d 1016, 1023 (2d Cir. 1986) (holding that the FCC violated the APA by relying on maps and internal studies that were not disclosed to the public for comment when it decided to abandon its minority preference in awarding broadcast licenses); *Allina Health Servs. v. Sebelius*, 746 F.3d. 1102, 1110 (D.C. Cir. 2014) ("[W]e have held for many years that an agency's failure to disclose *critical* material, on

6

which it relies, deprives commenters of a right under § 553 to participate in rulemaking." (quotation omitted) (emphasis in original)). It is conceivable that the same reasoning should apply under § 1099b. If so, TCF would have a strong case that the Department has acted arbitrarily and capriciously in restricting the public's ability to make informed comments on the Department's decisions on whether to recognize accrediting agencies.

According to the Solicitation, only written comments become part of the record considered by NACIQI and the SOD. This is the sole opportunity for third parties, including regulated entities subject to the accrediting agencies, to meaningfully influence the Department's decision. For the compliance report specifically, comments "must relate to issues identified in the compliance report." 83 FR 3335-01. Without access to the ABA's compliance report, it is impossible for TCF to meaningfully comment on such issues.

For an initial application, there is no similar restriction, but the application itself consists of evidence, including documentation, that the agency complies with the criteria for recognition. *See* 34 C.F.R. § 602.31(a). Notably, ACICS's recognition was previously revoked in 2016. *See* Compl. ¶¶ 36-37. Thus, its application presumably attempts to show the steps it has taken since then to come into compliance with the regulatory criteria outlined in 34 C.F.R. Part 602. Without reviewing this evidence, TCF cannot comment on ACICS's progress over the last year with respect to monitoring, enforcement, staffing, student achievement standards, ethics, and other deficiencies that ACICS previously displayed. *See In re Accrediting Council for Independent Colleges and Schools*, Docket No. 16-44-O, Decision of the Secretary 6 (Dec. 12, 2016) available at: http://www2.ed.gov/documents/acics/final-acics-decision.pdf. Thus, by ending the comment period before TCF and other groups have an opportunity to review the application, the Department may very well be acting arbitrarily and capriciously.

At the hearing, the Department countered with several arguments that, although well-taken, do not dissuade the Court from issuing a TRO at this junction. First, the Department noted third parties have never had access to applications or compliance reports at this stage of the recognition process. Yet, the fact that something has always been done a certain way does not necessarily mean that it is correct or lawful. Further, the Solicitation specifically calls for written comments on the compliance report.

Second, the Department suggested that comments regarding agencies submitting compliance reports are not limited to "issues identified in the compliance report." Although that is what the Solicitation states, the Department argues that the relevant statute and regulation allows comments on the "performance" of these agencies. *See* 20 U.S.C. § 1099b(n)(1)(A) (directing "the solicitation of third-party information concerning the performance of the accrediting agency or association"); 34 C.F.R. § 602.32(a) ("[I]nviting the public to comment on the agency's compliance with the criteria for recognition . . . ."). The Department explains the discrepancy by conceding that the Solicitation is "sloppily drafted," and that parties should know from looking to the statute and regulation that they are not so limited in the substance of their comments. This is not persuasive. A reasonable third party would believe that the Solicitation represents the Department's interpretation of the statute and its own regulations. Thus, the Department's action may be arbitrary or capricious insofar as the Solicitation may mislead the public into refraining from meaningful commentary.

Third, the Department suggested that the written comments would not be the only comments to be included in the record, stating that a transcript of the oral comments made at the NCICS meeting would also be transmitted to the SOD. Yet, as with the issue of comments regarding compliance reports, the Solicitation indicates that the process is otherwise, and the

Court has not had an opportunity to review evidence of this assertion.

Fourth, the Department argues that the Court does not have authority under the APA to grant relief in this claim because the Department's action is not a "final agency action." *See Sharkey v. Quarantillo*, 541 F.3d 75, 87 (2d Cir. 2008). This may be true, but the brief discussion of this issue at the hearing has not established this conclusively. The Court anticipates that the Department will elaborate on this argument at the next hearing. In sum, TCF has succeeded in raising serious questions.

TCF has also established that, without a TRO, it would suffer "irreparable harm." *See Citigroup Global Mkts.*, 598 F.3d at 35. "Plaintiffs may suffer irreparable harm if they are denied access to information that is highly relevant to an ongoing debate." *Lawyers' Comm. For Civil Rights Under Law v. Pres. Advisory Comm'n on Election Integ.*, No. 17-cv-1354, 2017 WL 3028832, at *9 (D.D.C. July 18, 2017). Here, the Department established a deadline for public comment that expires on February 16, 2018, and, according to the Solicitation, this comment period is the only opportunity to provide written comments that become part of the official record. Absent emergency relief, TCF will be effectively barred from meaningful public engagement and will suffer irreparable harm.

The "balance of hardships" stemming from a two-week (at most) stay of the commenting deadline for two of the agencies at issue also tips "decidedly toward" granting a TRO. *Citigroup Global Mkts.*, 598 F.3d at 35. TCF's hardship is compounded by the fact that public comment has, at least in recent years, been a vital part of this process, specifically in regard to convincing the previous Secretary of Education to terminate ACICS's federal recognition in December 2016. *See* Compl. ¶ 37. If ACICS has not improved its practices in the past year, and it receives federal recognition again despite its many deficiencies because third parties were unable to meaningfully

9

comment, that would also impose a hardship on the public at large. In contrast, extending the deadline for comments on two agencies for two weeks imposes relatively little burden on the Department. The Court is sensitive to the Department's argument that extending the deadline may disrupt the entire recognition process, which is an important function of the Department. But the Court is not convinced that a two week delay, especially given that the date of the NACIQI meeting has not yet been set, would have any dire consequences.

## **CONCLUSION**

The Court hereby enters a TRO enjoining the Department from enforcing the deadline for third parties to comment on the initial application by ACICS and the compliance report submitted by the ABA. This TRO is effective until the earlier of: (1) March 1, 2018, or (2) the disposition of the motion for a preliminary injunction. A hearing on the motion will be scheduled for February 22, 2018.

Dated: New York, New York
        February 15, 2017

SO ORDERED

PAUL A. CROTTY
United States District Judge