UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE CENTURY FOUNDATION,

                    Plaintiff,

        -v-

BETSY DEVOS, *in her official capacity as Secretary of Education*, and UNITED STATES DEPARTMENT OF EDUCATION,

                    Defendants.

18 Civ. 1128 (PAC)

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-3274
E-mail: rachael.doud@usdoj.gov

RACHAEL L. DOUD
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .......................................................................................................................3

    A.    Statutory Framework ...................................................................................3

    B.    The Comment Period at Issue....................................................................5

    C.    Plaintiff's FOIA Requests..........................................................................6

    D.    Procedural History .....................................................................................7

ARGUMENT ............................................................................................................................8

    I.    STANDARDS FOR PRELIMINARY AND INJUNCTIVE RELIEF..................8

    II.    PLAINTIFF CANNOT SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS CLAIMS ..............................................................9

        A.    PLAINTIFF'S APA CLAIM FAILS FOR LACK OF STANDING, LACK OF A FINAL AGENCY ACTION, AND FAILURE TO STATE A CLAIM ....................................................................10

            1.    Plaintiff Lacks Standing..................................................10

            2.    There Has Been No Final Agency Action .....................13

            3.    Plaintiff's APA Allegations Fail to State a Claim ........16

        B.    PLAINTIFFS' FOIA CLAIMS FAIL FOR MOOTNESS AND FAILURE TO STATE A CLAIM ..............................................................19

    III.    PLAINTIFF DOES NOT MEET THE REMAINING REQUIREMENTS TO ESTABLISH ITS ENTITLEMENT TO INJUNCTIVE RELIEF ........................22

CONCLUSION..........................................................................................................................25

# TABLE OF AUTHORITIES

**Cases:**

**Page(s)**

*Abbott Labs v. Gardner,*
    387 U.S. 136 (1967)............................................................................ 13, 16, 25

*Action on Smoking & Health v. Dep't of Labor,*
    28 F.3d 162 (D.C. Cir. 1994) ........................................................................ 15

*Air Espana v. Brien,*
    165 F.3d 148 (2d Cir. 1999)........................................................................... 13

*Allina Health Servs. v. Sebelius,*
    746 F.3d 1102 (D.C. Cir. 2014) ............................................................... 15, 18

*Animal Legal Defense Fund, Inc. v. Espy,*
    23 F.3d 496 (D.C. Cir. 1994) ........................................................................ 10

*Auer v. Robbins,*
    519 U.S. 452 (1997).......................................................................................17

*Benihana, Inc. v. Benihana of Tokyo, LLC,*
    784 F.3d 887 (2d Cir. 2015)............................................................................ 8

*Bennett v. Spear,*
    520 U.S. 154 (1997)................................................................................ 14, 15

*Brennan Ctr. for Justice at New York Univ. Sch. of Law v. United States Dep't of State,*
    No. 17 Civ. 7520, 2018 WL 369783 (S.D.N.Y. Jan. 10, 2018)......................... 21

*Cent. Platte Natural Res. Dist. v. U.S. Dep't of Agric.,*
    643 F.3d 1142 (8th Cir. 2011) ...................................................................... 11

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984)...................................................................................... 19

*Clarke v. Securities Industry Ass'n,*
    479 U.S. 388 (1987)................................................................................ 10, 12

*Dimodica v. U.S. Dep't of Justice,*
    05 CIV. 2165, 2006 WL 89947 (S.D.N.Y. Jan. 11, 2006)............................... 21

*Ferguson v. F.B.I.,*
    722 F. Supp. 1137 (S.D.N.Y. 1989)............................................................... 21

*Gulf Restoration Network v. U.S. Army Corps of Engineers*,
    No. 15 Civ. 6193, 2016 WL 4987256 (E.D. La. Sept. 19, 2016) .................................... 15

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) .................................... 10

*Landmark Legal Foundation v. EPA*,
    910 F.Supp.2d. 270 (D.D.C. 2012) ................................................................. 20

*Litwin v. OceanFreight, Inc.*,
    865 F. Supp. 2d 385 (S.D.N.Y. 2011) .............................................................. 2

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................ 10

*Malcomb v. Island Creek Coal Co.*,
    15 F.3d 364 (4th Cir. 1994) ........................................................................ 17

*Mastrovincenzo v. City of New York*,
    435 F.3d 78 (2d Cir. 2006)........................................................................... 9

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997)................................................................................... 8

*NAACP Legal Def. & Educ. Fund,Inc. v. U.S. Dep't of Hous. & Urban Dev.*,
    No. 07 Civ. 3378, 2007 WL 4233008 (S.D.N.Y. Nov. 30, 2007) .................................... 21

*Nat'l Black Media Coalition v. FCC*,
    791 F.2d 1016 (2d Cir. 1986)................................................................... 15, 18

*Nat'l Sec. Counselors v. CIA*,
    898 F. Supp. 2d 233 (D.D.C. 2012) ............................................................... 11

*Nat'l Wildlife Fed'n v. Adamkus*,
    936 F. Supp. 435 (W.D. Mich. 1996) ............................................................. 15

*New York v. EPA*,
    350 F. Supp. 2d 429 (S.D.N.Y. 2004)............................................................. 15

*Norton v. S. Utah Wilderness Alliance*,
    542 U.S. 55 (2004)................................................................................... 14

*Pearl River Union Free School Dist. v. Duncan*,
    56 F. Supp. 3d 339 (S.D.N.Y. 2015)............................................................. 13

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004)......................................................................... 9

*Sussman v. Crawford*,
    488 F.3d 136 (2d Cir. 2007) .................................................................................. 2, 9

*Taylor v. Vermont Dep't of Educ.*,
    313 F.3d 768 (2d Cir. 2002) ..................................................................................... 17

*United States v. Magnesium Corp. of Am.*,
    616 F.3d 1129 (10th Cir. 2010) ................................................................................ 17

*Velazquez v. Legal Servs. Corp.*,
    164 F.3d 757 (2d Cir. 1999), *aff'd*, 531 U.S. 533 (2001) ................................................ 8

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008).................................................................................................. 13, 22

*Wright v. Giuliani*,
    230 F.3d 543 (2d Cir. 2000)....................................................................................... 9

**Statutes:**

5 U.S.C. § 551 ............................................................................................................... 13

5 U.S.C. § 552 .......................................................................................................... *passim*

5 U.S.C. § 553 ............................................................................................................... 18

Administrative Procedure Act,
    5 U.S.C. § 701-706 ....................................................................................................... 1

5 U.S.C. § 702(2) .......................................................................................................... 12

5 U.S.C. § 704 .............................................................................................................. 9, 13

7 U.S.C. § 706 ............................................................................................................... 19

20 U.S.C. § 1001 ............................................................................................................. 1

20 U.S.C. § 1099b(n)(1) ........................................................................................... *passim*

**Regulations:**

34 C.F.R. § 602.31 ...................................................................................................... 5, 12

34 C.F.R. § 602.32 .................................................................................................... *passim*

34 C.F.R. § 602.34 .................................................................................................... 5, 23

34 C.F.R. § 602.36 ....................................................................................................... 5

34 C.F.R. § 602.37-38 ................................................................................................ 12

Geoffrey S. Berman, United States Attorney for the Southern District of New York, on behalf of defendants Betsy DeVos, in her official capacity as Secretary of Education, and the United States Department of Education (the "Department") (collectively, "Defendants"), respectfully submits this memorandum of law in opposition to Plaintiff The Century Foundation's ("Plaintiff's") motion for a preliminary injunction.

## PRELIMINARY STATEMENT

On February 13, 2018, Plaintiff moved for a temporary restraining order ("TRO") and preliminary injunction (i) compelling the Department to produce documents in response to two Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests for which the statutory twenty-day response period had not yet run, and (ii) halting a notice-and-comment period currently underway as part of the Department's statutorily-mandated approval process for accreditors of institutions of higher education, until Plaintiff had received, and had a "reasonable time" (Compl. ¶ 1) to comment on, the requested documents.  In essence, Plaintiff sought to bypass the procedures clearly laid out in FOIA and to challenge the Department's approval process midstream—without waiting for a final agency action as required by the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and despite conceding that the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1001 *et seq.*, which defines the Department's obligations with respect to accrediting agencies, does not mandate the disclosure of those documents as part of the comment process.  (*See* Tr. of Feb. 15, 2018 Oral Argument ("Arg. Tr.") at 22.)  Plaintiff has pointed to no case in which anything like this extraordinary relief has been granted.

Now, despite having received a TRO extending the comment period to March 1, 2018, and having also received the documents it requested under FOIA at least a week before that extended deadline, Plaintiff seeks to further derail the Department's approval process by seeking yet another extension of the comment period.  The Court should deny Plaintiff's request.

A preliminary injunction is an "extraordinary remedy never awarded as of right." *Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 391 (S.D.N.Y. 2011). Where, as here, the plaintiff seeks an injunction that will affect Government action, the plaintiff "must establish a clear or substantial likelihood of success on the merits," and also show that it will suffer irreparable harm in the absence of the requested relief. *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007). Plaintiff cannot establish any likelihood of success on its claims, because Plaintiff lacks standing and the Court does not have jurisdiction to grant Plaintiff the reliefs it seeks. That should be the end of the inquiry. Even if the Court were to consider the relative harms to the parties, however, those considerations also clearly weigh in Defendants' favor.

Plaintiff is not able to show a clear or substantial likelihood of success on the merits of its claims. Plaintiff is not likely to succeed on its APA claim because (i) Plaintiff lacks standing based upon a purported "informational" injury (Memorandum of Points and Authorities to Support a Temporary Restraining Order and Preliminary Injunction ("Mem."), ECF No. 15, at 9), because no statute explicitly grant a right to the requested information, as required to establish standing on that theory; (ii) there has been no final agency action, as required to bring suit under the APA; and (iii) Plaintiff has no legal right, under the APA, the HEA, the Department's regulations, or any other authority, to receive and comment upon the documents it requested. Plaintiff is not likely to succeed on its FOIA claims because it cannot establish that it was entitled to expedited processing, the statutory response period had not yet run before it filed suit, and the claims are, at any rate, moot now that the Department has fulfilled any FOIA obligations by providing Plaintiff with the documents it requested.

Plaintiff also is not able to show that it will suffer irreparable harm absent injunctive relief, because (i) even if the law required disclosure of the documents and time to review them

before the end of the comment period, Plaintiff will have had a full week to do so; and

(ii) assuming Plaintiff does have standing, it can challenge the Department's approval decisions once they have been made—*i.e.*, once there is a final agency action.  On the other side of the equation, any further extension of the comment period will jeopardize the Department's ability to complete its review process on the planned timeline.  In the case of the Accrediting Council for Independent Colleges and Schools ("ACICS"), one of the two accrediting agencies at issue, this delay may cause institutions of higher education to lose their entitlement to participate in federal student assistance programs and even close, in which case the Department may be obligated to discharge the students' loans.  Such a result is not in the public interest, and thus the balance of equities tips decidedly against a grant of injunctive relief.

## BACKGROUND

### A.  Statutory Framework

In order to participate in the federal student assistance programs authorized by Title IV of the HEA, institutions of higher education must be accredited.  *See* HEA § 498; 20 U.S.C. § 1099c.  While independent accrediting agencies establish operating standards for institutions and determine whether those standards have been met in particular cases, the Department provides oversight of the system through its review and recognition of accrediting agencies.  (*See* Declaration of Donna S. Mangold ("Mangold Decl.") ¶¶ 6-7.)  As part of that oversight role, the HEA requires the Secretary of Education to "conduct a comprehensive review and evaluation of the performance of all accrediting agencies or associations which seek recognition by the Secretary in order to determine whether such accrediting agencies or associations meet" criteria established by the Secretary.  HEA § 496(n)(1); 20 U.S.C. § 1099b(n)(1).  In doing so, "[t]he Secretary shall conduct an independent evaluation of the information provided by such agency or association," which "shall include . . . the solicitation of third-party information concerning the

3

performance of the accrediting agency or association." *Id.*

In accordance with the HEA, the Department promulgated regulations governing its review and approval of accrediting agencies. *See* 34 C.F.R. Part 602. Those regulations lay out a detailed, multi-step process for the collection and consideration of information pertaining to an agency's fitness for approval. (*See* Mangold Decl. ¶¶ 9-21 (describing and elaborating on the information provided herein.) Specifically, the regulations provide that, after an agency submits an application for initial or continued recognition, or change in scope, or a compliance report, "Department staff publishes a notice of the agency's application or report in the Federal Register inviting the public to comment on the agency's compliance with the criteria for recognition and establishing a deadline for receipt of public comment." 34 C.F.R. § 602.32(a). The Department staff then reviews the agency's submission along with any "public comments and other third-party information the Department staff receives by the established deadline, and the agency's responses to the third-party comments," and "prepares a written draft analysis of the agency . . . including any identified areas of non-compliance and a proposed recognition recommendation." *Id.* § 602.32(b)(2) & (f)(1)-(2). The staff sends this draft analysis, along with any third-party comments, to the agency, and the agency is given at least 30 days to respond. *Id.* § 602.32(f)(2)-(3). After receiving the agency's response, the staff prepares a final written analysis, which it submits to the National Advisory Committee on Institutional Quality and Integrity ("NACIQI"). *Id.* § 602.32(f)(4)-(5).

NACIQI holds a meeting, open to the public, at which "interested parties, including those who submitted third-party comments concerning the agency's compliance with the criteria for recognition" are invited to "make oral presentations." *Id.* § 602.34(d). At least seven days before the meeting, the staff provides NACIQI with the staff's final written analysis, along with

4

the additional information the staff has gathered and the agencies' applications and compliance reports. *Id.* §§ 602.34(c) & 602.32(f)(5). These materials are made available for public inspection at the Department's headquarters in Washington, D.C. (Mangold Decl. ¶¶ 16-17.)[1] "A transcript is made of [the] Advisory Committee meeting[]." 34 C.F.R. § 602.34(e). After the NACIQI meeting, NACIQI "forwards to the senior Department official its recommendation with respect to each agency." *Id.* § 602.34(g). The "senior Department official makes a decision regarding recognition of an agency based on the record compiled" in accordance with the foregoing procedures. *Id.* § 602.36(a).

The regulations provide that "[t]he Secretary's processing and decision making on requests for public disclosure of agency materials . . . are governed by the Freedom of Information Act," and "[t]he Secretary processes FOIA requests in accordance with 34 C.F.R. part 5 and makes all documents provided to the Advisory Committee available to the public." 34 C.F.R. §§602.31(f)(1)-(2).

## B. The Comment Period at Issue

On January 24, 2018, the Department published a notice calling for the submission of written, third-party comments regarding several "accrediting agencies currently undergoing review for purposes of recognition by the U.S. Secretary of Education." 83 Fed. Reg. 3335; Declaration of Herman Bounds, Jr. ("Bounds Decl.") Ex. A. The notice stated that, in accordance with the requirements of the HEA, Section 496(n)(1), the Department was soliciting "comments concerning the performance of accrediting agencies under review by the Secretary,"

---

[1] At the argument held on February 15, 2018, the undersigned stated that accrediting agencies' applications and compliance reports are disclosed to the public prior to the NACIQI meeting. (*See, e.g.*, Arg. Tr. at 10.) I have subsequently learned that these materials are made available for public inspection at that time, though not publicly disseminated. (*See* Mangold Decl. ¶¶ 16-17.) I apologize for any misstatement.

which "will be on the agenda for the Spring 2018 National Advisory Committee on Institutional Quality and Integrity meeting." *Id.* These agencies included ACICS, which had submitted an application for initial recognition, and the American Bar Association ("ABA"), which had submitted a compliance report after the Department identified certain compliance deficiencies. 83 Fed. Reg. 3335-3336. The notice set a deadline of February 16, 2018. *Id.* 3336.

The notice further stated that "[c]omments about an agency's recognition after review of a compliance report must relate to issues identified in the compliance report and the criteria for recognition cited in the Senior Department official's letter that requested the report, or in the Secretary's appeal decision if any." 83 Fed. Reg. 3336. While the Department acknowledges that this language could suggest that comments should address the compliance report itself, that was not the Department's intent, and the Department has not traditionally made applications or compliance reports available in advance of the written comment process. (Bounds Decl. ¶ 14.) On February 26, 2018, the Department issued a corrected notice replacing this language with the following statement: "Comments about an agency's recognition after review of a compliance report must relate to issues identified in the senior Department official's letter that requested the report, or in the Secretary's appeal decision, if any." (Bounds Decl. Ex. C at 6-7.)

### C. Plaintiff's FOIA Requests

On January 23, 2018, Plaintiff submitted FOIA requests to the Department seeking the application submitted by ACICS and the compliance report submitted by the ABA and requesting expedited processing of its requests. (Compl. Exs. B & C.) The FOIA Service Center received the requests on January 24, 2018, and forwarded them to the Department. (Declaration of Jill Siegelbaum ("Siegelbaum Decl.") Ex. A.) On February 6, 2018, the Department denied Plaintiff's requests for expedited processing. (Compl. Exs. F & G.) In accordance with FOIA,

the Department had twenty business days, until at least February 21, 2018, to respond to Plaintiff's requests.  5 U.S.C. § 552(a)(6)(A)(i).[2]

      Starting on February 16, 2018—several days before the February 21, 2018, response deadline—the Department began producing documents in response to Plaintiff's requests. (Siegelbaum Decl. ¶¶ 6-8.)  The Department produced the narrative statements for both entities on February 16, the supporting documentation accompanying the ABA compliance report on February 20, and the supporting documentation accompanying the ACICS application on February 21.[3]  (*Id.* ¶¶ 7-8.)  On February 21, the Department sent Plaintiff its final response to Plaintiff's requests.  (*Id.* Ex. A.)

### D.  Procedural History

      Plaintiff filed suit on February 8, 2018, asserting causes of action under FOIA and the APA, and seeking declaratory and injunctive relief requiring the Department to produce the ACICS application and ABA compliance report and extending the time to submit comments "until a reasonable time after release of the documents at issue."  (Compl. ¶ 1.)  With regard to its APA claim, Plaintiff alleges that the Department's "conduct . . . is arbitrary, capricious, and not otherwise in accordance with law," because it had not disclosed the ACICS application and ABA compliance report, which Plaintiff contends it needs "to provide informed comments."

---

[2] The Government is not required to produce the requested records during the twenty-day period, but merely to convey its determination on whether it will produce the records to the requester. *See, e.g.*, *Nat'l Day Laborer Organizing Network v. U.S. Immigration and Customs Enforcement*, 236 F. Supp. 3d 810, 815 (S.D.N.Y. 2017).

[3] Due to an inadvertent failure to redact information subject to one of FOIA's exemptions, 5 U.S.C. § 552(b)(6), the Department clawed back three of the exhibits.  The Department produced redacted versions of two of the exhibits on February 21, 2018, and of the remaining exhibit on February 22, 2018.  (Siegelbaum Decl. ¶ 9.)  Additionally, the Department discovered that it had inadvertently failed to include three of the ACICS exhibits in its February 21, 2018, productions, and provided those exhibits to Plaintiff on the morning of February 22, 2018.  (*Id.*)

(Compl. ¶¶ 71, 73.)  With regard to its FOIA claims, Plaintiff challenges the Department's denial of its requests for expedited processing.  Plaintiff also asserts a claim for "Failure to Produce Requested Documents" under FOIA (Compl. at 23), despite the fact that the Department's time to respond to Plaintiff's FOIA requests had not yet run at the time Plaintiff filed suit.

On February 13, 2018, Plaintiff submitted, and the Court entered, an order to show cause regarding Plaintiff's request for a TRO and preliminary injunction.  (Dkt. No. 14.)  On February 14, 2018, Plaintiff filed a memorandum of law and declarations in support of the Order to Show Cause.  (Dkt. No. 15-17.)  On February 15, 2018, the Court heard oral argument.  Later that day, the Court entered a TRO extending the comment period until the earlier of March 1, 2018, or the disposition of Plaintiff's request for a preliminary injunction.  (Dkt. No. 15.)

## ARGUMENT

## I.   STANDARDS FOR PRELIMINARY INJUNCTIVE RELIEF

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted).  Ordinarily, a party seeking a preliminary injunction must demonstrate:

> (1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction.

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (internal quotation marks and ellipsis omitted).  Where, as here, a party seeks a preliminary injunction against the Government, however, the more rigorous likelihood-of-success standard always applies.  *Velazquez v. Legal Servs. Corp.*, 164 F.3d 757, 763 (2d Cir. 1999), *aff'd*, 531 U.S. 533 (2001);

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 424 (2d Cir. 2004) (because "government action taken in furtherance of a regulatory or statutory scheme . . . is presumed to be in the public interest," plaintiff must meet the more rigorous likelihood-of-success standard). The movant must, "by a *clear showing*, carr[y] the burden of persuasion," and "establish a clear or substantial likelihood of success on the merits." *Sussman*, 488 F.3d at 139-40.

Similarly, where a plaintiff seeks a mandatory injunction that "'will alter rather than maintain the status quo,'" it must show "clear or substantial likelihood of success." *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000). "A heightened 'substantial likelihood' standard may also be required when the requested injunction (1) would provide the plaintiff with all the relief that is sought and (2) could not be undone by a judgment favorable to defendants on the merits at trial." *Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 (2d Cir. 2006).

## II.   PLAINTIFF CANNOT SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS CLAIMS

Plaintiff cannot show any likelihood of success on the merits of its claims, let alone a "clear" or "substantial" one, *Wright*, 230 F.3d at 547, for a simple reason—the Court lacks the authority to grant Plaintiff the relief it seeks. This is so both because Plaintiff lacks standing and because neither the APA nor FOIA provides a cause of action in this context. With regard to the APA claim, the agency has not made any decision, much less a final one. It is beyond cavil that a plaintiff cannot challenge intermediate steps in an agency process, but must wait until the administrative process is complete, *see* 5 U.S.C. § 704—and yet that is precisely what Plaintiff attempts to do. With regard to the FOIA claims, Plaintiff prematurely brought suit before the expiration of the statutory response period, and FOIA provides no authority for the Court to extend the Department's written comment period. At any rate, Plaintiff's FOIA claims are now moot because the Department has timely produced the documents Plaintiff sought.

9

## A.  PLAINTIFF'S APA CLAIM FAILS FOR LACK OF STANDING, LACK OF A FINAL AGENCY ACTION, AND FAILURE TO STATE A CLAIM

### 1.  Plaintiff Lacks Standing

To establish standing, a plaintiff must establish the following three elements as an "irreducible constitutional minimum":  (1) "injury in fact," meaning "an invasion of a legally protected interest which is (a) concrete and particularized . . .  and (b) actual or imminent"; (2) "a causal connection between the injury and the conduct complained of," *i.e.*, that "the injury [is] fairly . . . trace[able] to the challenged action of the defendant"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  To secure judicial review under the APA, the plaintiff must also show that the injuries it asserts fall within the "zone of interests" of the statute at issue.  *See Clarke v. Securities Industry Ass'n*, 479 U.S. 388, 400 n.16 (1987).

Here, Plaintiff does not claim that it would be harmed in the event the Department ultimately chooses to approve ACICS and/or the ABA—an argument that would not, at any rate, be ripe because the Department has not yet made any such decision.  Instead, Plaintiff claims that it has "informational standing" because it "failed to obtain information that, under its reading of the relevant law, it was entitled to receive."  (Mem. at 9-10 (internal quotation marks omitted).) But Plaintiff does not plausibly allege informational standing, and its request for a preliminary injunction must therefore be denied.

Informational standing arises "only in very special statutory contexts," where a statutory provision has "explicitly created a right to information." *Animal Legal Defense Fund, Inc. v. Espy*, 23 F.3d 496, 502 (D.C. Cir. 1994); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982).  To the extent Plaintiff attempts to rely on its right to seek information under FOIA, it is well established that FOIA's own review procedures displace any cause of action

10

under the APA.  *See, e.g.*, *Cent. Platte Natural Res. Dist. v. U.S. Dep't of Agric.*, 643 F.3d 1142, 1148 (8th Cir. 2011) ("[w]here a plaintiff "seeks . . . a court order requiring the production of documents under both its APA claim and its FOIA claim," FOIA itself provides the plaintiff with an "adequate remedy in a court"); *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 264 (D.D.C. 2012) ("[W]here a plaintiff claims that an agency has wrongfully withheld agency records in connection with a discrete FOIA request, an APA claim seeking compelled disclosure of the withheld records is precluded.").  And while FOIA imposes on agencies a general obligation to make agency records available to the public upon request, it does not create a right to any particular record or category of records, let alone an "explicitly created" "right to information" of the sort that courts have required to find informational standing.  *Espy*, 23 F.3d at 502; *see, e.g.*, *Havens Realty Corp.*, 455 U.S. at 373 (holding that plaintiff had informational standing under Fair Housing Act, where provision expressly "conferred on all persons a legal right to truthful information about available housing").  Indeed, a ruling that simply making a FOIA request for records confers on the requestor standing to challenge agency actions related to the requested records, in the absence of any injury in fact, would dramatically expand the concept of information far beyond the narrow and "very specific context," *Espy*, 23 F.3d at 502, that courts have recognized.  For these reasons, Plaintiff's alleged entitlement to documents under FOIA cannot possibly give rise to standing under the APA.

Apart from its FOIA requests, Plaintiff has identified no statutory or regulatory provision that "explicitly create[s] a right to" the information it seeks, *Espy*, 23 F.3d at 502, and, indeed, none exists.  The HEA requires only that the Secretary's evaluation of accrediting agencies include "the solicitation of third-party information concerning the *performance of the accrediting agency or association*."  20 U.S.C. § 1099b(n)(1)(A) (emphasis added).  This language does not

11

even imply, much less make explicit, that Plaintiff has a right to receive the application and report it seeks.  Plaintiff in fact concedes as much.  (*See* Arg. Tr. at 22 ("It is true that it's not explicitly in the Higher Education Act that we are entitled to the ABA compliance report.")).

Nor do the Department's regulations create an explicit right to receive the ACICS application or ABA compliance report in advance of the written comment process.  Instead, the regulations provide that, after agencies submit applications or reports, the Department "invit[es] the public to comment on the agency's *compliance with the criteria for recognition*."  34 C.F.R. § 602.32(a) (emphasis added).  The regulations separately provide that "[t]he Secretary processes FOIA requests in accordance with 34 CFR part 5," *id.* § 602.31(f)(2)—which is precisely what the Department has done.  The regulations do not imply, much less make explicit, a right to receive agency applications or compliance reports outside of the procedures set forth by FOIA.

At any rate, to secure judicial review under the APA Plaintiff would have to show that it falls within the "zone of interests" that the HEA is meant to protect.  *Clarke*, 479 U.S. at 400 n.16.  The HEA regulates accrediting agencies, a group into which Plaintiff clearly does not fall.  Further, the regulations create an administrative process by which an accrediting agency can appeal the senior Department official's approval decision to the Secretary, and in turn challenge the Secretary's decision in court "as a final decision in accordance with applicable Federal law." 34 C.F.R. §§ 602.37-38.  That the regulations create an explicit cause of action for agencies—the entities regulated by the statute and regulations—and require those agencies to wait until a final determination from the Secretary after administrative review before proceeding in court, undermines any claim that Plaintiff falls within the "zone of interests" protected by the HEA.  *See* 5 U.S.C. § 702(2) (court may not grant relief under the APA "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought").

Accordingly, Plaintiff lacks standing with respect to its APA claim.  That claim thus cannot withstand a motion to dismiss, much less demonstrate a "clear" entitlement to a preliminary injunction.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

### 2.  There Has Been No Final Agency Action

Plaintiff's APA claim fails for the additional reason that there has been no agency decision, much less a final one, and the Court therefore lacks jurisdiction.

The APA permits judicial review of "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  Agency action is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  *Id.* § 551(13).  "A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."  *Id.* § 704.

"The APA explicitly requires that an agency action be final before a claim is ripe for review."  *Air Espana v. Brien*, 165 F.3d 148, 152 (2d Cir. 1999).[4]  The purpose of the finality requirement is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Id.* (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 148-49 (1967)).  "As a general matter, two conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's

---

[4] There has recently been some uncertainty in the Second Circuit as to whether the proper procedural vehicle for dismissal of an APA claim for failure to allege a final agency action is Rule 12(b)(1) or 12(b)(6).  *See Pearl River Union Free School Dist. v. Duncan*, 56 F. Supp. 3d 339, 350-51 (S.D.N.Y. 2015).  However, the standards of review under either rule "are substantively identical," with the "only substantive difference" being the party who bears the burden of proof.  *Id*. *Id.* at 351.  Thus, the result will be the same regardless of whether Plaintiff's failure to allege a final agency action is a jurisdictional or claim-based defect.

decisionmaking process—it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear,* 520 U.S. 154, 177-78 (1997).

Here, Plaintiff has not identified any affirmative agency action, much less a final one. Plaintiff cannot possibly challenge the Department's approval determination with respect to ACICS or the ABA, as no such determination has been made.  Plaintiff characterizes the agency action at issue as "denying access to essential materials and information prior to the close of the comment period."  (Mem. at 14.)  To the extent the purported denial refers to the Department's response to Plaintiff's FOIA requests, that claim clearly would not be cognizable under the APA. (*See supra* at 12-13.)

Aside from the Department's response to Plaintiff's FOIA requests, Plaintiff has not identified any agency decision, much less one that marks the "consummation of [its] decisionmaking process" and "from which legal consequences will flow."  *Bennett,* 520 U.S. at 177-78.  And while an "agency action" may in some instances mean a "failure to act," that "failure to act" must correspond to "a *discrete* agency action that [the agency was] *required to take,*" *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63-64 (2004) (emphasis in original)— for example where "an agency is compelled by law to act within a certain time period."  *Id.* at 65; *see also id.* at 63 (Section 706(1) "carried forward the traditional practice prior to its passage, when judicial review was achieved through use of the so-called prerogative writs," which were "normally limited to enforcement of a specific, unequivocal command").  Here, as discussed above, Plaintiff has identified no statutory or regulatory command requiring the Department to disclose the ACICS report and ABA compliance report by any particular date.

Instead, Plaintiff simply challenges the manner in which the Department conducts its

statutorily-mandated accrediting agency review process.  The Court can only entertain such a

challenge upon completion of that review process, once a final approval decision has been made.

*See, e.g.*, *Action on Smoking & Health v. Dep't of Labor*, 28 F.3d 162, 165 (D.C. Cir. 1994)

(holding that it would be premature to review an agency action still in the rulemaking process);

*Gulf Restoration Network v. U.S. Army Corps of Engineers*, No. 15 Civ. 6193, 2016 WL

4987256, at *3 (E.D. La. Sept. 19, 2016) (dismissing for lack of subject matter jurisdiction claim

that notice of comment period was deficient, because closing comment period was "plainly the

sort of interlocutory action that does not 'mark the consummation of the agency's

decisionmaking process'" (quoting *Bennett*, 520 U.S. at 177-78)); *Nat'l Wildlife Fed'n v.

Adamkus*, 936 F. Supp. 435, 443 (W.D. Mich. 1996) ("Consideration of public comment is an

intermediate stage in the process of creating a final agency action; it is a preliminary or

procedural action subject to review upon final agency action."); *see also New York v. EPA*, 350

F. Supp. 2d 429, 435 (S.D.N.Y. 2004) (citing *Action on Smoking*, 28 F.3d at 165, and describing

the agency action in that case as "clearly incomplete," but holding that EPA determinations at

issue were nevertheless final because they "constitute[d] the agency's final determination, at the

conclusion of a statutorily mandated review process, on the safety of the tolerance in question").[5]

---

[55] In its Opinion and Order granting Plaintiff's request for a TRO, the Court cited two cases for
the proposition that some courts have held that the APA's informal rulemaking provisions
"require[s] a meaningful opportunity to participate."  (Feb. 15, 2018 Opinion & Order ("Op."),
Dkt. No. 19, at 6-7).  Notably, while both cases involved a challenge to the sufficiency of the
notice and comment process that had occurred, in both the plaintiff challenged the final rule that
resulted from that process, rather than attempting to stall the process midway, as Plaintiff does
here.  *See Nat'l Black Media Coalition v. FCC*, 791 F.2d 1016, 1023 (2d Cir. 1986) (challenging
report and order issued by Federal Communications Commission); *Allina Health Servs. v.
Sebelius*, 746 F.3d 1102, 1106-1110 (D.C. Cir. 2014) (challenging final rule promulgated by
Secretary of Health and Human Services).  Those cases thus underscore that Plaintiff's APA
claim is premature, and that alleged procedural defects can be challenged at the conclusion of the
administrative process (assuming Plaintiff can establish standing).

Were it otherwise, the APA's finality requirement would lose all meaning, as parties would be able to halt agency rulemakings and other processes midstream in order to challenge any aspects of the procedure they argue is improper.  It is precisely this sort of "judicial interference" the APA's finality requirement seeks to avoid.  *Abbott Labs*, 387 U.S. at 148-49.

### 3.   Plaintiff's APA Allegations Fail to State a Claim

Plaintiff also cannot demonstrate a clear or substantial likelihood of success on its APA claim because it fails to state a plausible claim for relief.

Plaintiff argues that "[b]y denying access to ABA report and ACICS Application" prior to the close of the comment period, "[the Department's] conduct is arbitrary, capricious, and otherwise not in accordance with law."  (Mem. at 17.)  As detailed above, however, Plaintiff has not pointed to any statute or regulation requiring the Department to disclose those documents prior to the close of the comment period.  (*See supra* at 13-14.)

In the absence of any language in the statute or regulations that supports its interpretation, Plaintiff focuses almost exclusively on the single sentence in the January 24, 2018, notice soliciting comments that states that "[c]omments about an agency's recognition after review of a compliance report must relate to the issues identified in the compliance report and the criteria for recognition cited in the senior Department official's letter that requested the report, or in the Secretary's appeal decision, if any."  83 Fed. Reg. 3336; Bound Decl. Ex. A; *see* Mem. at 1, 2, 6, 10, 14.  Leaving aside the fact that the cited language refers only to the ABA compliance report, and not the ACICS application, Plaintiff has not cited any authority to suggest that the notice could itself gives rise to an actionable right to information.  Instead, Plaintiff appears to argue that the cited language in the notice proves there is a right to the documents because it "is the department's interpretation of [its] regulations."  (Arg. Tr. at 22.)  This argument fails.

First, the Court only looks to an agency's interpretation of its regulations when the

regulations themselves are ambiguous. *See Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 780 n.7 (2d Cir. 2002). In this case, the regulations are not ambiguous. They provide for public comment on "the agency's compliance with the criteria for recognition," 34 C.F.R. § 602.32(a), and say nothing about public comment on applications or compliance reports.

Second, the January 24, 2018, notice did not purport to interpret the statute or regulations, except to say that the solicitation of comments "concerning the performance of accrediting agencies under review by the Secretary is required by section 496(n)(1)(A) of the Higher Education Act (HEA) of 1965, as amended." 83 Fed. Reg. 3335. This "interpretation"—which mirrors the language of the statute—in no way suggests that the HEA mandates the disclosure of agency applications or reports, or the solicitation of comments about those documents.

Finally, on February 26, 2018, the Department issued a corrected notice clarifying that the public comments being solicited were intended to address "the accrediting agencies' performance and compliance with the criteria for recognition, and not . . . any applications or reports agencies may have submitted to the Department." (Bounds Decl. Ex. C at 3.) The corrected notice further clarified that, in the Department's view, "[t]he process does not require the commenters to have access to the specific applications or compliance reports submitted by the accrediting agencies." (*Id.*) If the statute or regulations were ambiguous, it is the interpretation in the corrected notice that would be entitled to deference. *See United States v. Magnesium Corp. of Am.*, 616 F.3d 1129, 1140-41 (10th Cir. 2010) (agency is free to disavow and amend tentative interpretations of regulations); *Malcolm v. Island Creek Coal Co.*, 15 F.3d 364, 369 (4th Cir. 1994) (agency can make considered changes to its interpretations); *see generally Auer v. Robbins*, 519 U.S. 452 (1997).

In its Opinion and Order, the Court stated that "[t]he procedure outlined by statute and

regulation for the Department to recognize accrediting agencies seems analogous to the procedure for informed rulemaking authorized by Section 553(c) of the APA"; that "[s]ome courts, including the Second Circuit, have interpreted § 553 to require a meaningful opportunity to participate," and that "[i]t is conceivable that the same reasoning should apply under § 1099b." (Op. at 6-7.) But 5 U.S.C. § 553 and the case law interpreting it do not suggest that Plaintiff has any right to receive the ACICS application and ABA compliance report for purposes of submitting written comments.

5 U.S.C. § 553 sets forth procedures for agency rulemaking, and provides that "the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." The cases cited by the Court held that this opportunity to comment on proposed rules includes an opportunity to comment on the "critical" material on which the agency relies in formulating those rules. *See Nat'l Black Media Coalition*, 791 F.2d at 1022-24; *Allina Health Servs.*, 746 F.3d at 1110. In contrast to 5 U.S.C. § 553, however, the HEA does not, in connection with the recognition process, provide for solicitation of comments regarding a proposed rulemaking or other proposed agency decision, but merely requires the Department to solicit information on the "performance of the accrediting agenc[ies]" in making its decision. 20 U.S.C. § 1099b(n)(1). Had Congress intended to require the Department to publish and solicit comments on its proposed approval decision, it could easily have done so. Congress did not do so, and there is no basis for reading into the statute a broad right to comment that appears nowhere in its terms.[6]

---

[6] In fact, doing so would necessitate changing the entire regulatory scheme the Department has created, which provides for written comments from the public early in the proceedings, followed by back-and-forth between Department staff and the agencies, after which the staff's final

For these reasons, even if Plaintiff could establish standing and there were a final agency action to review pursuant to the APA, Plaintiff's complaint would still face dismissal because it does not plausibly allege that the Department acted in a manner that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706.

## B.  PLAINTIFFS' FOIA CLAIMS FAIL FOR MOOTNESS AND FAILURE TO STATE A CLAIM

Plaintiff also cannot establish a clear or substantial likelihood of success on its FOIA claims, which are moot now that Plaintiff has received the documents it requested and would not, at any rate, have given Plaintiff an entitlement to the relief it sought.

Plaintiff purports to bring suit pursuant to 5 U.S.C. § 552(a)(6)(E)(iii), which provides that "[a]gency action to deny or affirm denial of a request for expedited processing pursuant to this subparagraph . . . shall be subject to judicial review."  At the time Plaintiff filed suit, although the Department had denied Plaintiff's request for expedited processing, its time to respond to the FOIA requests had not yet expired.  Plaintiff has no likelihood of success on its FOIA claims because (i) the Department's decision to deny Plaintiff's request for expedited processing was correct; (ii) Plaintiff's purported challenge to the Department's failure to produce the requested documents was not yet ripe, as the statutory time period had not yet elapsed; and (iii) Plaintiff's claims are now moot, since Plaintiff has received the documents it requested.

To obtain expedited processing, a requester must demonstrate a "compelling need" for the requested documents by showing that either: (1) failure to obtain expedited processing would

---

analysis and all other documentation is provided to and considered by NACIQI, NACIQI makes a recommendation, and the senior Department official makes a final decision.  (*See supra* at 6-7; Mangold Decl. ¶¶ 13-21.)  If the public were required to be given an opportunity to submit written comments on the entire record, the sequence of this process would have to be drastically altered.  To the extent the statute is ambiguous on this point, the Department's regulations, which reflect its interpretation of its obligations under the statute, are entitled to deference.  *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

pose an "imminent threat to the life or physical safety of an individual"; or (2) the requester is "primarily engaged in disseminating information," and there is an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v). Judicial review of the denial of a request for expedited processing "shall be based on the record before the agency at the time of the determination." *Id.* § 552(a)(6)(E)(iii).

Plaintiff has never argued that it meets the "imminent threat" prong of the test. With regard to the second potential basis for expedited processing, Plaintiff's FOIA requests fail to assert that Plaintiff is "primarily engaged in disseminating information," *id.* § 552(a)(6)(E)(v), much less make an evidentiary showing that that is the case. *See* Compl. Exs. B & C ("TCF is a non-partisan think tank . . . . TCF's mission is to foster opportunity, reduce inequality, and promote security at home and abroad."); *see generally Landmark Legal Found'n v. EPA*, 910 F. Supp. 2d. 270, 275-76 (D.D.C. 2012) (information dissemination must "be the main activity of the requestor"). Finally, Plaintiff's alleged urgency is unrelated to a Federal Government activity, as the public does not need the requested documents to submit comments, which are meant to address ACICS and ABA's "performance" and "compliance with the criteria for recognition." 20 U.S.C. § 1099b(n)(1); 34 C.F.R. § 602.32(a). Accordingly, the Department's decision to deny Plaintiff's request for expending processing was correct.

Moreover, the relief Plaintiff sought under FOIA was not reversal of the Department's decision to deny expedited processing, but an order requiring the Department to produce the requested documents. (*See, e.g.*, Compl. ¶ 1.) The judicial review envisioned by 5 U.S.C. § 552(a)(6)(E)(iii) for denials of expedited processing does not preempt the Government's right to determine whether particular documents should be produced under FOIA, nor does it compress the statutory time period for responding to FOIA requests. It simply allows the Court, in cases in

20

which documents have not been produced, to supervise the agency's production of responsive, non-exempt documents on a reasonably practicable timetable. *See, e.g.*, *Brennan Ctr. for Justice at New York Univ. Sch. of Law v. U.S. Dep't of State*, No. 17 Civ. 7520, 2018 WL 369783 (S.D.N.Y. Jan. 10, 2018); *Ferguson v. F.B.I.*, 722 F. Supp. 1137, 1145 (S.D.N.Y. 1989).[7]

In any event, Plaintiff's FOIA claims are now moot because the Department has produced the documents Plaintiff requested.[8] *See, e.g., Dimodica v. U.S. Dep't of Justice*, 05 CIV. 2165, 2006 WL 89947, at *3-*4 (S.D.N.Y. Jan. 11, 2006).  While Plaintiff argues in a footnote in its brief that "this court's broad equitable authority under FOIA permits the court to extend the statutorily required comment [period]" (Mem. at 14 n.8), Plaintiff cites no authority for that extraordinary proposition.  FOIA provides courts with "jurisdiction to enjoin [an] agency from withholding agency records and to order the production of agency records improperly withheld from the complainant," 5 U.S.C. § 552(a)(4)(B); it does not grant courts authority to supervise the agency's administrative proceedings outside the FOIA context.  Indeed, Plaintiff's expansive view of the Court's "broad equitable authority" would lead to absurd results, by allowing FOIA requesters to seek equitable relief under the guise of FOIA to seek judicial intervention in agencies' substantive administrative proceedings.  Now that Plaintiff has received

---

[7] *NAACP Legal Defense & Educ. Fund, Inc. v. U.S. Dep't of Housing & Urban Dev.*, No. 07 Civ. 3378, 2007 WL 4233008, at *6 (S.D.N.Y. Nov. 30, 2007), is not to the contrary.  The court in that case held that a plaintiff who initially sought review under 5 U.S.C. § 552(a)(6)(E)(iii), and whose FOIA requests were subsequently denied by the agency while the case was still pending, was not required to pursue an administrative appeal before seeking judicial review of the denial of the FOIA requests.  Plaintiff has not provided any support for the proposition that review of the denial of a request for expedited processing under 5 U.S.C. § 552(a)(6)(E)(iii) permits a plaintiff to bypass the Government's opportunity to determine in the first instance whether the documents sought should be produced under FOIA.

[8] The Department's redactions to the documents were minimal.  (*See* Siegelbaum Ex. A.)  Plaintiff has given no indication that it seeks to challenge those redactions, but any disputes in that regard would not, at any rate, adversely affect Plaintiff's ability to comment.

21

the documents it requested, its FOIA claims are moot and subject to dismissal.  Accordingly, Plaintiff cannot establish a clear or substantial likelihood of success on its FOIA claims.

## III.   PLAINTIFF DOES NOT MEET THE REMAINING REQUIREMENTS TO ESTABLISH ENTITLEMENT TO INJUNCTIVE RELIEF

Plaintiff similarly fails to make a "clear showing," *Winter*, 555 U.S. at 22, that it meets the remaining requirements for preliminary injunctive relief:  that it would be irreparably harmed in the absence of an injunction; that the entry of an injunction would serve the public interest; and that the balance of hardships tips in its favor.

Plaintiff's argument in its brief and at oral argument that it faced irreparable injury was premised on the fact that the Department's comment period was set to close before Plaintiff had received the documents it sought under FOIA, and it would therefore be unable to comment on those documents.  (Mem. at 21.)  As a result of the TRO entered by the Court, Plaintiff has now received the requested documents and had more than a week to submit comments.  Even if the ACICS application and ABA compliance report were necessary to be able to "meaningfully" comment (Mem. at 18)—which they are not—Plaintiff has now had that opportunity.

Given Plaintiff's continued pursuit of its request for a preliminary injunction, Defendants anticipate that Plaintiff will argue that this week-long period is insufficient, due in part to the length of the documents.  This argument is unpersuasive, particularly in light of the severe burden on the Government were the comment period to be extended any further.  First, while the two documents total approximately 20,000 pages, the ACICS application and ABA compliance report each consist of a narrative statement explaining the agency's efforts to comply with the relevant criteria, followed by supporting documentation.  (Siegelbaum Decl. ¶¶ 6-8.)  ACICS's narrative statement is only 125 pages long, while the ABA's is only ten.  (*Id.*)  Clearly, these documents should not take long to review, and Plaintiff received them on February 16 (*id.*)—

nearly two weeks before the close of the comment period.

Further, even accepting Plaintiff's argument that it needed the ACICS application and ABA compliance report to "meaningfully" comment (Mem. at 18), the statute, regulations and solicitation make clear that the focus of those comments should be on the agencies' "performance" and "compliance with the criteria for recognition."  20 U.S.C. § 1099b(n)(1); 34 C.F.R. § 602.32(a).  Nothing in any of these sources suggests that Plaintiff must, in order to comment, address every piece of supporting documentation submitted by these agencies.

Additionally, as discussed above, Plaintiff's argument that it needed the documents it sought in order to meaningfully comment is premised almost entirely on the single sentence in the notice soliciting comments that referred to the ABA compliance report.  (*See supra* at ___.)  As the Court recognized, the solicitation contains no comparable language with respect to the ACICS application.  (Op. at 7.)  The ABA compliance report, including exhibits, totals only about 2,000 pages, and Plaintiff received the report plus all of the exhibits by February 20.  (Siegelbaum Decl. ¶ 8.)  Plaintiff cannot seriously contend that the more than a week it has had since receiving these documents is insufficient to review them and prepare comments.

Further mitigating any potential harm to Plaintiff is the fact that, in addition to the written comments it has now had an extra two weeks to prepare, it will have an opportunity to provide oral comments at the NACIQI meeting scheduled for May 22-24, 2018.   (Mangold Decl. ¶¶ 18, 20.)  Those comments, along with the rest of the meeting, will be transcribed and become part of the record for review by the senior Department official before he makes a final decision on whether to approve ACICS and the ABA.  (*Id.*; 34 C.F.R. § 602.34(e).)

Finally, if Plaintiff has standing, it can challenge the Department's final decisions on whether to approve ACICS and the ABA once those final decisions have been made.  This is the

avenue for relief permitted by the APA, and it negates any claim of irreparable harm.

On the other side of the equation, an additional extension of the comment period, which would give the Plaintiff the ultimate relief it seeks, risks derailing the Department's review and approval process, an outcome that would impose significant hardship on the Department and is contrary to the public interest.  As explained, and detailed further in, the Mangold declaration, the existing two-week extension to the comment process means that, in order to stay on pace with its planned schedule, Department staff will now have only eight business days, instead of the sixteen originally planned, to review and incorporate any comments the Department receives into the draft analyses due to the agencies by March 13, 2018.  (Mangold Decl. ¶ 42.)  The March 13 deadline cannot be materially delayed without changes to subsequent deadlines, including the agencies' deadline to respond to the draft analyses (April 12, 2018), *see* 34 C.F.R. § 602.32(f)(3) (agencies must be given at least 30 days to respond to draft analysis), and the staff's deadline to submit its final analyses and reports to NACIQI (May 15, 2018), and if these deadlines are not met, ACICS and the ABA cannot be considered at the May 2018 NACIQI meeting.  (Mangold Decl. ¶¶ 37, 44.)  In ACICS's case, failure to review its application at the May 2018 NACIQI meeting would mean that, if the Department chooses to approve ACICS, it will not be possible to do so before a June 12, 2018, deadline, which is mandated by statute, *see* 20 U.S.C. § 1099c(h)(2), by which 142 institutions previously accredited by ACICS, with a combined 90,000 students, must ensure accreditation by ACICS or another agency or face termination of their Title IV eligibility.  (Mangold Decl. ¶¶ 46-48.)  Loss of Title IV eligibility may in turn cause schools to close, and trigger the Department's obligations to discharge the student loans and provide additional Pell Grant funds to students at those schools.  (*Id.* ¶¶ 49-52.) This could have substantial financial implications; for example, if 20,000 of the approximately

24

90,000 students obtained a loan discharge for only $5,000 each (and most students loan balances are significantly higher), the loss to the United States would be $100 million.

Congress passed the HEA in order "to strengthen the educational resources of our colleges and universities and to provide financial assistance for students in postsecondary and higher education."  Pub. L. No. 89-329, 79 Stat. 1219.  To carry out that mandate, the HEA tasks the Department with providing federal recognition to agencies that in turn determine whether to grant institutions of higher education the accreditation they need in order to qualify for federal student aid programs authorized by Title IV of the HEA.  (*See* Mangold Decl. ¶¶ 6-7.)   Granting Plaintiff yet more time to review and comment on the documents it already received under FOIA will directly impede the Department's ability to carry out this function with respect to the two agencies at issue.  This is a quintessential example of the type of interference the APA's finality requirement is meant to prevent.  *Abbott Labs*, 387 U.S. at 148-49.

Finally, Plaintiff's argument, if credited, will have wide-ranging implications for agencies' ability to conduct rulemakings and other decision-making processes.  According to Plaintiff's theory—which finds no support in the APA—that statute provides a vehicle by which any party purportedly interested in providing comments as part of a notice-and-comment process can halt that process midway in order to demand the provision of documents or information it claims will permit it to submit more informed comments—all outside of the process set forth by FOIA and the regulations governing the proceeding.  Far from promoting informed agency decision-making, such a rule risks stalling any such process entirely.  That outcome is not in the public interest.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's request for a preliminary injunction.

25

Dated:  February 27, 2018
        New York, New York

                              Respectfully submitted,

                              GEOFFREY S. BERMAN
                              United States Attorney for the
                              Southern District of New York
                              *Attorney for the Defendants*

                    By:       /s/ Rachael L. Doud
                              RACHAEL L. DOUD
                              Assistant United States Attorney
                              86 Chambers Street, 3rd Floor
                              New York, New York 10007
                              Tel.:  (212) 637-3274
                              E-mail: rachael.doud@usdoj.gov