**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE CENTURY FOUNDATION,

                                    Plaintiff,

                    -v-

BETSY DEVOS, *in her official capacity as*
*Secretary of Education*, and UNITED STATES
DEPARTMENT OF EDUCATION,

                                    Defendants.

No. 18 Civ. 1128 (PAC)

## DECLARATION OF DONNA S. MANGOLD

I, Donna S. Mangold, hereby declare under the penalty of perjury as follows:

1.        I am over the age of 18 and competent to testify to the matters herein.

2.        I am employed by the United States Department of Education ("Department") as an attorney in the Office of General Counsel, Division of Postsecondary Education.  I am licensed to practice law in the District of Columbia and in the State of Maryland.

3.        I am a program attorney for the Department's Office of Federal Student Aid ("FSA").  In addition, I am one of two program attorneys for the Accreditation Group ("AG") of the Office of Postsecondary Education ("OPE").

4.        I certify that I am duly authorized, am qualified, and have been given authority by the Department to make the statements contained in this Declaration. The statements contained herein are based on my personal knowledge as an employee of the Department and my review of the pertinent records, all of which are maintained by the Department in the normal course of its official business.

## BACKGROUND

5.        As a program attorney for the AG, I work with the other AG program attorney to advise AG staff as needed in conjunction with its review of agencies for initial or continued recognition, and review of compliance reports under 34 C.F.R. § 602.  In addition, we represent the Department in proceedings under 34 C.F.R. § 602.36 (review by the Senior Department Official) and § 602.37 (appeals to the Secretary).  As a program attorney for FSA, I work with the other program attorneys to advise the eight School Participation Divisions ("SPDs") of FSA.  The SPDs provide program compliance oversight and eligibility review functions for institutions that

participate in federal student aid programs authorized by Title IV of the Higher Education Act ("Title IV programs"), including (but not limited to) Pell Grants and federal direct loans.

6.      To participate in Title IV programs, institutions must comply with a number of requirements set by statute as well as the Department's regulations.  One of these requirements is that an institution must be accredited by a federally-recognized accreditor.  Accrediting agencies are private entities designed to oversee postsecondary institutions and serve as "reliable authorities regarding the quality of education or training offered by the institutions or programs they accredit." 34 C.F.R. § 602.1; *see also id.* § 602.3.  They carry out that quality assurance function through a variety of activities, including by promulgating standards designed to govern institutional quality and by assessing and monitoring their accredited institutions' compliance with those standards.  *See, e.g.*, 20 U.S.C. § 1099b(c).

7.      Pursuant to Title IV of the Higher Education Act of 1965 ("HEA"), as amended, only institutions accredited by a federally recognized accrediting agency can provide students with access to federal student aid programs.  *See generally* 20 U.S.C. § 1099c.  Not all accrediting agencies are federally recognized.  The HEA authorizes the Secretary, where appropriate, to provide federal recognition to accrediting agencies.  *See* 20 U.S.C. § 1099b.  An accrediting agency seeking federal recognition must demonstrate compliance with specific regulatory criteria.  *Id.* § 1099b(a); *see also* 34 C.F.R. Part 602, Subpart B—The Criteria for Recognition. To demonstrate compliance with those criteria, an agency must have standards and policies in place that comport with the regulatory requirements, and the accrediting agency must be able to prove the effectiveness of those policies and procedures in evaluating its accredited institutions. *See, e.g.*, 20 U.S.C. §§ 1099b(l); 34 C.F.R. §§ 602.31(a)(2); 602.32(c); 602.36(e)(2); 602.37(d).

8.      Because "[n]o accrediting agency . . . may be recognized by the Secretary . . . for a period of more than 5 years[,]" to maintain their federal recognition, accrediting agencies must apply for renewal of federal recognition at a minimum of every five years, depending on the length of the prior period of recognition.  *See* 20 U.S.C. § 1099b(d).

9.      The HEA and its implementing regulations create an extensive administrative process governing recognition decisions.  *See generally* 34 C.F.R. Part 602, Subpart C—The Recognition Process.   The initial part of this process is conducted by the AG.  The AG is a specialized office within OPE that is responsible for, among other responsibilities, the Department's oversight of accrediting agencies and the recognition process.  The AG consists of a director and staff analysts.

10.     Accrediting agency petitions for initial recognition and renewal of recognition and compliance reports are reviewed twice a year, at public meetings held in the spring and winter, which are conducted by the National Advisory Committee on Institutional Quality and Integrity ("NACIQI").  *See* 20 U.S.C. § 1011c(d) and 34 C.F.R. § 602.34.  NACIQI is a statutorily-created federal advisory committee that advises the Secretary on matters related to postsecondary education and the recognition of accrediting agencies.  *See generally* 20 U.S.C. § 1011c.

11.     Prior to each NACIQI meeting, AG staff, along with NACIQI's executive director and staff, develop a schedule for the upcoming meeting once the meeting date is set.

12.     The schedule needs to incorporate several months for the staff to do its analysis, as well as to accommodate regulatory requirements for the receipt of written public comments, and mandated periods for allowing the agency to respond to a written draft staff analysis and provide final materials to the agency and NACIQI seven days before the meeting.

13.     Pursuant to 34 C.F.R. § 602.32(b), AG staff analyzes the petition or compliance report, conducts site visits of the agency and its accredited institutions, solicits and reviews public comments, reviews complaints against the agency or its institutions, and reviews and analyzes any other information that the staff assembles for purposes of the review.  The schedule needs to incorporate enough time prior to the meeting for all of this to occur prior to submitting the written draft analysis to the agency.

14.     As a part of this process, OPE issues a Federal Register notice soliciting written comments from the public about the "agency's compliance with the criteria for recognition," and sets a deadline for receipt of public comments.  34 C.F.R. § 602.32(a).

15.     The draft staff analysis must identify all areas of noncompliance, a proposed recognition recommendation, and all supporting documentation, including all third party comments received by the deadline established in the Federal Register notice.  The scheduled deadline for transmittal of the draft staff analysis to the agency must take into consideration a 30 day response period for the agency as required by 34 C.F.R. § 602.32(f)(3), and sufficient time (optimally at least 30 days) for the analyst to review the agency response and new supporting materials, and to prepare a Final Staff Analysis and Final Staff Report.

16.     At least 30 days before the meeting, OPE publishes another Federal Register notice of the meeting (including dates, times and location), inviting the public (including those who submitted written comments) to make oral presentations at the meeting.  *See* 20 U.S.C. § 1011c(d)(1)(B), 34 C.F.R. § 602.34(d) and (e).   This notice also advises the public of their right to inspect the meeting materials at the Department.

17.     The Final Staff Analysis and Final Staff Report, along with supporting documentation from the AG staff and the agency, including all written public comments, must be provided to the agency and NACIQI at least seven days before the public meeting, as required by 34 C.F.R. § 602.32(f)(5).  At that time, the Final Staff Report is posted on the public portal of OPE's accreditation website, and pursuant to the meeting notice (as described above), the Department makes the Final Staff Analysis (and all related exhibits) available for public inspection at the Department's headquarters in Washington, D.C.  The agency petition or compliance report is included as part of the Final Staff Analysis.

18.     At the meeting, NACIQI considers the agency's written submissions and exhibits, and the analyses, reports and exhibits provided by the AG, to include the written comments submitted by the public.  During the meeting the accrediting agency, AG staff, and members of the public are provided an opportunity to make oral presentations.  34 C.F.R. § 602.34(e).

19.     After the discussion of each agency in turn, NACIQI votes on its recommendation to grant or deny initial or continued recognition, or to require a compliance report.

20.     Following the meeting, the recommendations of the AG staff and NACIQI are forwarded to a designated senior Department official ("SDO"). 34 C.F.R. § 602.34(g). The SDO is also provided all materials considered by NACIQI and the AG staff, as well as a transcript of the NACIQI meeting which contains all discussion and deliberations on each agency, as well as all of the oral comments provided by the public. Within ten days of the NACIQI meeting, the accrediting agency and the Department staff may submit written comments to the SDO regarding NACIQI's recommendation. 34 C.F.R. § 602.35(a).

21.     Upon review of those submissions and all relevant documentation, the SDO may take a variety of actions, including initial or continued recognition of an agency if it is in compliance with all of the criteria. 34 C.F.R. §§ 602.36(a), (e). Where the agency applying for recognition is found to be noncompliant with any of the required criteria, the SDO has the discretion to either: (1) deny, limit, suspend, or terminate recognition, or (2) continue the agency's recognition for a specified period and submit a compliance report. *Id.* §§ 602.36(e)(2)-(3). The SDO may exercise his or her discretion to invoke the latter compliance report option if the SDO determines that the noncompliant agency will achieve compliance within 12 months or less. *Id.; see also* 20 U.S.C § 1099b(l). Absent an appeal to the Secretary of Education ("Secretary"), the SDO's decision constitutes the final agency decision on the application. Id. § 602.36(j).

## ACCREDITATION RECOGNITION – JUNE 2016 REVIEWS

22.     In January 2016, both the Accrediting Council for Independent Colleges and Schools ("ACICS") and the American Bar Association ("ABA") submitted petitions for re-recognition of their then-existing recognized status. Other agencies also submitted petitions for initial or continuing recognition, or submitted compliance reports to be considered at the June 2016 NACIQI meeting. In response to the solicitation for written comments, over 40 written comments were received relating to ACICS, and 11 were received relating to the ABA.

23.     The AG undertook an extensive examination in accordance with the procedures outlined above, and in mid-June 2016 issued its recommendations that ACICS's recognition be withdrawn and that the ABA's recognition be continued for a period of 12 months to allow it to come into compliance with the criteria with respect to which the AG found deficiencies. Consistent with the recognition regulations and AG procedures, the AG recommendations were submitted to NACIQI in a Final Staff Analysis and a Final Staff Report.

24.     I attended the June 2016 NACIQI meeting, and was present for the review of both ACICS and the ABA. Eighteen people provided oral comments at the meeting relating to ACICS, including a representative of the Century Foundation. Two people provided comments in regard to the ABA. After hearing public comments and engaging in an extensive discussion, NACIQI voted to recommend the withdrawal of ACICS's recognition, and to recommend that the ABA's recognition be continued for twelve months, contingent on submission of a compliance report at the conclusion of the twelve-month period.

25.     On September 22, 2016, the SDO issued a decision withdrawing ACICS's recognition, and directing the ABA to come into compliance with certain identified areas of noncompliance within twelve months, and to submit a compliance report 30 days thereafter.

26.     The ABA did not appeal the SDO decision directing a compliance report.

27.     ACICS appealed the SDO's decision withdrawing its recognition to the Secretary.  On December 12, 2016, the Secretary affirmed the SDO's decision, and ACICS's federal recognition was withdrawn.

## INSITITUTIONS AND THE EIGHTEEN-MONTH PERIOD TO OBTAIN NEW ACCREDITATION

28.     As a result of the Secretary's Decision, institutions that were accredited by ACICS had 18 months from the date of that decision to become accredited by another federally-recognized accreditor to continue participating in Title IV programs.  This 18-month time period is the maximum allowed pursuant to 20 U.S.C. § 1099c(h)(2).

29.     The 18-month period expires on June 12, 2018.  If an institution does not become accredited by a federally-recognized accreditor within the 18-month period, its participation in Title IV programs will end.

30.     Following the withdrawal of ACICS's recognition, in late December 2016 and early January 2017, the ACICS-accredited institutions were required to sign provisional Program Participation Agreements ("PPPAs").  These PPPAs replaced and amended the institutions' then-existing Program Participation Agreements ("PPAs") to allow them to continue participating in Title IV programs during the 18-month period.  Of 237 ACICS-accredited institutions that were sent PPPAs, 235 PPPAs were executed by the institutions, and their participation continued.

31.     Because many students and institutions rely on Title IV programs, the Department was vigilant to ensure that institutions wishing to continue their participation in Title IV programs were taking the necessary steps to do so within the 18-month period mandated by statute.  To that end, the Department set certain milestones as conditions in the new PPPAs.  These milestones were intended to ensure that the institutions periodically demonstrate progress toward finding a federally-recognized accreditor, or if they chose to close, to provide for an orderly close out.

32.     As of February 23, 2018, 142 institutions were still in the process of seeking new federally-recognized accreditation.

## ACCREDITATION RECOGNITION – MAY 2018 REVIEWS

33.     On August 27, 2017, the AG sent letters to the five accrediting agencies that were required to renew their applications and would need to be reviewed at the Spring 2018 NACIQI meeting, and the four agencies whose compliance reports were due and would also be reviewed.

The letter advised these agencies that the Spring NACIQI meeting would be held in the latter part of May 2018.  In addition, nine new agencies are under review for initial recognition.

34.    The Spring 2018 NACIQI meeting is set for May 22-24, 2018.  The meeting date was announced at the recent NACIQI meeting which was held on February 7-9 2018, and is also posted on the NACIQI website.  Currently, 14 agencies are on the agenda for the meeting, including both ACICS and the ABA.

35.    Following withdrawal of recognition, a once-recognized agency must submit an initial petition for recognition, and ACICS has done so to be reviewed at the Spring 2018 NACIQI meeting.  When an agency is seeking initial recognition, it must provide evidence of compliance with all of the recognition criteria, which includes up to 95 separate criteria, depending on the institution.  The AG is currently reviewing ACICS's petition, which was submitted on December 29, 2017.

36.    There are currently five analysts in the AG.  These analysts have the responsibility for reviewing the agencies scheduled for review at the upcoming May NACIQI meeting, to include the petitions for initial recognition, renewal petitions, and compliance reports.

37.    As set forth above, leading up to every NACIQI meeting, the AG sets a schedule for the process so it can comply with its regulatory mandates.  The schedule for the May 2018 meeting requires the draft staff analysis for all agencies (plus supporting documents and written public comments) to be submitted to the agencies no later than March 13, 2018.  Thereafter, the schedule requires the agencies to submit their respective responses to the draft analyses and written public comments by April 12, 2018.  Final Staff Analyses and Final Staff Reports must be submitted to the agencies and NACIQI no later than May 15, 2018.

38.    Elizabeth Daggett is the AG staff analyst responsible for reviewing ACICS's application.

39.    As is the case for all agencies under review at the upcoming May 2018 NACIQI meeting, the draft staff analysis for ACICS is due on March 13th, which is twelve calendar days from the current extended due date for written public comments – March 1st.  Because ACICS's application is being evaluated as an initial petition for recognition, the draft analysis must address all regulatory criteria applicable to ACICS, which includes an examination of 90 criteria.  The review and analysis must take into account all of the elements described in 34 C.F.R. § 602.32(b), and must identify all areas of noncompliance.  When it filed its petition, ACICS submitted approximately 260 exhibits in support of its petition, totaling approximately 18,000 pages.  The exhibits include: ACICS's written standards for accreditation and related policies and procedures; examples of self-studies, site visit reports, institutional responses, and council action letters; monitoring reports; council and other committee meeting agendas, minutes, and action documents; qualifications of and training materials for agency volunteers at all levels; and correspondence with various communities of interest.

40.     As required by 34 C.F.R. §§ 602.32(b)(2) and (f)(2), the draft staff analyses submitted to the agencies, including ACICS and the ABA, will include the third party comments received under 34 C.F.R. § 602.32(a).  In addition, those comments will have been reviewed by the

analysts and are incorporated into the draft analysis in a separate section addressing third party comments.  The analysist will also address comments (either individual comments or a group of similar comments) as appropriate within the discussion of an agency's noncompliance.

41.     ACICS will have 30 calendar days to respond to the draft staff analysis (by April 12, 2018), and is allowed to submit new supporting materials and information in any areas where the draft staff analysis may identify noncompliance (*see* 34 C.F.R. § 602.32(f)(3)).  The schedule gives Ms. Daggett another 30 calendar days to analyze the response and prepare the Final Staff Analysis and Final Staff Report.  Those documents must be submitted to ACICS and NACIQI no later than May 15, 2018 – seven calendar days before the NACIQI meeting, as required by 34 C.F.R. § 602.32(f)(5).

## CONSEQUENCES OF FURTHER DELAY OF THE DEADLINE FOR SUBMITTING THIRD PARTY COMMENTS

42.     As set forth above, the original February 16, 2018 deadline for public comments was intended to provide the analysts approximately 16 business days to review and incorporate the written comments into their respective draft analyses which must be sent to the agencies no later than March 13, 2018.  The extension of the deadline to March 1, 2018 has shortened the period to only 8 business days before the draft staff analyses must be submitted to ACICS and the ABA.

43.      It is expected, as in the June 2016 review, that public written comments relating to ACICS will be voluminous.  Given the fact that this is a full review examining nearly all areas of the criteria, it is likely that the comments will be wide-ranging and on a variety of topics.

44.     If there is any further delay beyond March 1, 2018 for the public comment period, it would not be reasonably feasible for the review of ACICS to be completed and the draft analysis submitted to the agency by March 13, 2018, which is the deadline that must be met for ACICS to remain on the May 2018 NACIQI meeting agenda.

45.     If the volume of comments with regard to the ABA is so significant that the review cannot be accomplished prior to issuance of the draft staff analysis, the Department would have to defer the ABA to the next NACIQI meeting, or delay the May 2018 meeting.  The ABA would continue to be recognized and students at its schools would not lose Title IV funding, however.

46.     The consequences of a delay in the review of ACICS cannot be remedied in the same manner.  If ACICS is removed from the May meeting agenda, it will not be possible for NACIQI to even consider whether ACICS is in compliance with the criteria, and it would be unable to regain recognition prior to June 12, 2018.

47.     As noted above, there are currently 142 institutions that are still in the process of seeking accreditation with another federally-recognized agency, and otherwise meeting the milestones established by the Department in the PPPAs.  At this point, the process is fluid, as some institutions are obtaining new accreditation, and others are being advised that their applications

are no longer under consideration by the proposed new accrediting agency. At this time
however, the Department does not know which of the 142 institutions that are still in process will
be successful in obtaining a new federally-recognized accrediting agency, or how many or which
ones may not secure new accreditation. The Title IV enrollment at these 142 institutions is
approximately 90,000 students.

48.     It is reasonable to conclude that at least some of these 142 institutions will not ultimately
succeed in obtaining a new federally-recognized accreditor. For these schools, the possibility of
ACICS regaining recognition is their only option for continued Title IV participation beyond
June 12, 2018. If ACICS is removed from the May meeting agenda, that option will no longer
be even a possible path forward for those schools and their students.

49.     An unplanned loss of Title IV eligibility almost always results in the closure of an
institution. It is thus reasonable to conclude that almost all schools that are unable to secure new
federally recognized accreditation by June 12, 2018 will close. If ACICS is removed from the
May meeting agenda because of further delays in the public comment process, some schools may
decide to close immediately.

50.     When a school closes, students at the institution are entitled to closed school loan
discharges, thereby directly implicating the federal fisc. Pursuant to 34 C.F.R. § 685.214, the
Department discharges all federal direct loan indebtedness for students in attendance within 120
days of the date of closure who do not complete their program elsewhere. This discharge fully
relieves the borrower of the debt obligation for direct student loans owed to the United States.
The discharge relief provided to borrowers results in direct financial loss to the United States,
unless the Department is able to recover the discharged amounts from the defunct institutions.

51.     The Department has processes in place for orderly closures. One of those processes is to
facilitate "teach-outs" of closing institutions, to ensure students have a reasonable opportunity to
complete their program of study, either at the closing institution, or through an agreement with
another institution. However, students at a closing or closed institution are not required to accept
a teach-out. The Department cannot yet predict how many of the 142 institutions that currently
do not have another federally-recognized accreditor may close in advance of or after June 12,
2018, or how many of the approximately 90,000 students currently enrolled in those institutions
might ultimately be entitled to loan discharges.

52.     In addition, students who receive Pell Grants but are unable to complete their program
due to school closure are entitled to relief which also has financial consequences for the United
States. Ordinarily, each student's eligibility for Pell Grants is limited to twelve semesters or the
equivalent. 20 U.S.C. § 1070a(c)(5). According to published Department guidance, when a
school closes before the student can complete his or her program, the Department restores Pell
Grant eligibility that the student who did not complete his or her program expended for
enrollment at the closed school.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 27, 2018

Donna S. Mangold