IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE CENTURY FOUNDATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Betsy DeVos, *in her official capacity*, and the United States Department of Education,<br><br>　　　　　Defendants. | No. 18-cv-1128-PAC |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S
APPLICATION FOR A PRELIMNARY INJUNCTION**

Alexander S. Elson* (N.Y. Bar 4809976)
National Student Legal Defense Network
1440 G Street, N.W.
Washington, D.C. 20005
alex@nsldn.org
(202) 734-7495

*Counsel for The Century Foundation*

*Member of New York Bar only; practicing in the District of Columbia under supervision of members of the D.C. Bar while D.C. Bar application is pending.

On February 16, 2018, this Court temporarily enjoined the U.S. Department of Education ("Department") from enforcing the deadline for third-parties to comment on both an initial application for recognition submitted by the Accrediting Council for Independent Colleges and Schools ("ACICS") and a compliance report submitted by the American Bar Association ("ABA"). Dkt. 19 ("TRO"). On February 27, 2018, the Department filed an Opposition to Plaintiff's application for a Preliminary Injunction. Dkt. 28. Plaintiff makes this brief reply to address recent developments and respond to issues raised by the Department.

For the reasons stated here and previously, *see* Dkts. 9, 15-17, which are herein incorporated, TCF continues to suffer harm and requests the entry of a preliminary injunction or, in the alternative, a good cause extension of the TRO pursuant to FRCP 65(b).

## SUPPLEMENTAL FACTS

The facts of this case are set out in the Complaint, Dkt. 9, and TCF's Memorandum in support of the application for the TRO and Preliminary Injunction. ("TCF Br."), Dkt. 15. TCF limits this recitation to events that have transpired since the entry of the TRO.

### A. The Department Published Two More Federal Register Notices.

On February 16, 2018, the day that the TRO was entered, the Department released for public inspection a notice in the Federal Register extending the comment period to March 1, 2018. This notice was published on February 22, 83 Fed. Reg. 7702 (Feb. 22, 2018) ("Second Solicitation"), and specifically called "for comments on the initial application for recognition of ACICS" as well as "on … the compliance report submitted by the ABA." Declaration of Alexander Elson ("Elson Decl.") ¶ 4 & Exh. 1.

On the morning of February 26, 2018, counsel for TCF sent a letter to counsel for the Department. Elson Decl. ¶ 8 & Exh. 2. The letter specifically alerted the Department that the

Second Solicitation had called for comment "on the [ACICS] application" and "on … the [ABA] compliance report." Elson Decl. Exh. 2 (quoting 83 Fed. Reg. 7702 (Feb. 22, 2018)). Later that afternoon, the Department released for public inspection through the Federal Register a *third* federal register notice ("Third Solicitation"). That third notice—which did not publish until yesterday, *i.e.,* the day before the comment period is set to end—purports to "correct" both the original Solicitation and the Second Solicitation with respect to the scope of the solicited comments. Elson Decl. ¶ 9 & Exh. 3; 83 Fed. Reg. 8660 (Feb. 28, 2018).

### B. The Department Responded to TCF's FOIA.

Following the entry of the TRO, the Department produced documents in response to TCF's FOIA requests: (i) the ACICS and ABA "narrative statements" to TCF on February 16, 2018; (ii) exhibits to ABA's narrative statement on February 20; and (iii) exhibits to the ACICS application on February 21, 2018. Elson Decl. ¶¶ 3, 5, 6. Combined, these materials total around 20,000 pages. Declaration of Robert Shireman ("Shireman Decl.") ¶ 5. Upon receipt of the materials, TCF started to review and simultaneously began making the documents publicly available via its website. *Id.* ¶ 6.[1] As set forth more fully in the Shireman Decl., TCF has reallocated staffing, asked employees to work overtime, and nevertheless has not completed its review and analysis. *Id.* ¶¶ 7-11, 15.

---

[1] On February 22, counsel for the Department contacted counsel for TCF to ask that TCF replace approximately eight exhibits due to the disclosure of personally identifiable information ("PII") that the Department failed to redact. TCF promptly complied with the Department's request. Elson Decl. ¶ 7. When conducting its own review, TCF staff discovered numerous other examples of PII that should have been, but was not, redacted by the Department. Shireman Decl. ¶ 12. In addition, on February 23, TCF received a phone call from the general counsel of the ABA informing TCF that numerous documents released by the Department contained PII and requesting that TCF immediately take down and redact the materials. *Id.* ¶ 13. TCF worked with the ABA to re-review the materials for PII, make the necessary redactions, and repost the materials. *Id.* Because of these errors, TCF instructed its staff to remain vigilant for PII at all times. *Id.* at ¶ 14. This additional work added time and complexity to TCF's review process. *Id.* Each error required TCF staff to pull documents from its website, make redactions and repost materials. *Id.*

**ARGUMENT**

**I.      THE COURT HAS JURISDICTION OVER TCF'S APA CLAIMS.**

By establishing a deadline for comment in the Federal Register, the Department has issued a final decision governing TCF's ability—or lack thereof—to provide informed comment. Nevertheless, the Department asserts this Court does not have authority to grant relief as to the TCF'S APA claim because the Department's decision to preclude informed comments is not a "final agency action."  Dept. Br. [Dkt. 27] at 13.

With respect to finality under the APA, the Second Circuit has defined the "core question" as "whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties."  *Sharkey v. Quarantillo*, 541 F.3d 75, 87-88 (2d Cir. 2008).  Applying these principles in a "pragmatic way," as the Supreme Court and Second Circuit instruct courts to do, both conditions are readily met.  *Sharkey*, 541 F.3d at 89 (quoting *FTC v. Standard Oil of Cal.*, 449 U.S. 232, 239 (1980).  *See also Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

*First,* ED's refusal to provide an effective period to comment on the ACICS Application and the ABA Compliance Report is unmistakably "the consummation of the agency's decisionmaking process" with respect to the Department's statutory obligation to solicit third-party comments from TCF and afford the relief sought by plaintiffs.  *Bennett*, 520 U.S. at 178.  *See also Salazar v. King*, 822 F.3d 61, 82 (2d Cir. 2016) (finding that the Department of Education's action was "final" where it was the consummation of ED's decisionmaking process with respect to the "relief sought by plaintiffs.").

In *Salazar*, the Second Circuit held that, in the context of false certification loan discharge proceedings, the Department of Education's conduct constituted a final agency action

3

where the Department refused to *temporarily* suspend loan collection efforts against, and send notice to, putative class members.  *Id.* at 82.  As the Court noted, the fact that an act was "temporary [did] not undermine the fact that the decision … is a final agency action because the action 'had an immediate and substantial impact on the complaining party.'"  *Id.* at 83.  The *Salazar* Court ultimately held that the Department's "refusal to send notices" constituted a final action with respect to the borrowers "right to receive such notices." *Id.*   The same can be said here; ED's decision to close the comment period has an immediate and substantial impact on TCF's ability to effectively exercise its statutory right to provide informed comments.  It is irrelevant that the process is ongoing as to the ACICS and ABA recognition decisions.

*Second*, legal consequences flow from ED's decision not to provide an effective comment period insofar as this is TCF's *only* opportunity to submit "written material [to] … become part of the official record" concerning the review of accrediting agencies. 83 Fed. Reg. 3336 (Jan. 24, 2018).  *See also* Elson Decl. Exh. 4 (NACIQI procedures). Notably, despite its repeated revisions to the Solicitation, the Department has not modified its position that *written* comments after the deadline are prohibited.  *Id.*  Absent relief, TCF will be effectively barred from submitting informed written comments as requested in the initial or Second Solicitation.

## II.     TCF CONTINUES TO BE INJURED BY THE DEPARTMENT'S FAILURE TO PROVIDE THE DOCUMENTS

TCF previously established it has suffered, and continues to suffer, an informational injury as a result of the Department's conduct.  TCF Br. at 8-13.  Despite the fact that the Department has produced documents in response to TCF's FOIA request, TCF remains injured because the record is not clear as to whether the Department has provided the *final* ACICS application.  At oral argument on February 15, 2018, counsel for the Department stated that the

ACICS application was not in final form and that it was in process.[2]  At the same time, the Department has represented that the documents provided to TCF constitutes the "most recent version" of the application and were received by the Department "in December."  Elson Decl. ¶ 3.  The *only* way that the Department's statements are consistent are if (i) the materials provided are the most recent but (ii) the Department expects additional materials before it considers the application final or complete.  If true, the first two solicitations are asking for public comment on non-final documents.  Given the lack of clarity on these factual issues, TCF is left wondering whether the Department has provided TCF with all of the documents to which it is entitled.

Because TCF has continued to "espouse[] a view of the law under which the Defendant . . . is obligated to disclose certain information that [TCF] has a right to receive," *McFarlane v. First Unum Life Ins. Co.*, __ F. Supp 3d. __, 2017 WL 3495394 at *8 (S.D.N.Y. Aug. 15, 2017), TCF remains aggrieved by ED's conduct.  Although the Department may now disagree with TCF's espoused view (as well as the view the Department espoused in solicitations one and two, but not three), the standing inquiry is satisfied as to the APA claim.[3]  As to the FOIA claim, the text of the FOIA statute and *NAACP Legal Defense & Educ. Fund, Inc. v. U.S. Dep't of Housing & Urban Dev.*, No. 07 Civ. 3378, 2007 WL 4233008, at *6 (S.D.N.Y. 2006) are dispositive.

### III. THE DEPARTMENT SHOULD NOT BE PERMITTED TO REDEFINE THE SCOPE OF THE SOLICITATION IN RESPONSE TO THIS CASE.

We have previously established how the Solicitation *expressly required* that third-party comments regarding the ABA Compliance Report "must relate to issues identified in the

---

[2]  The Department has also informed third-parties, as recently as February 5, 2018, that "they are still working on the petition."  Declaration of Ben Miller ("Miller Decl.") ¶ 7 & Miller Decl. Exh. 2; Declaration of Clare McCann ("McCann Decl.") ¶ 7 & McCann Decl. Exh. 3.  Although unclear whether the "they" refers to ACICS or the Department, in light of counsel's statements in open court that the application is not final, both are plausible.

[3]  The Department's claim that TCF does not fall within the "zone of interests," Dept. Br. [Dkt. 27] at 12-13, is unavailing.  Congress has expressly required the Department to solicit public comments in these circumstances.

5

compliance report." Complaint ¶ 30; TCF Br. at 12.  The Department has since suggested that comments regarding agencies submitting compliance reports are not, contrary to the plain language of the Solicitation itself, limited to "issues identified in the compliance report."  Dept. Br. [Dkt. 27] at 8.  Despite the clarity of this language, the Department has asserted that the Solicitation was "sloppily drafted" and that parties should not give credence to this interpretation of the HEA and the Department's regulations.  Order at 8.  We have also established, *see* TCF Br. at 15-17, that because ACICS is required to submit *evidence* of compliance with the recognition criteria as part of its initial application, and because the regulations permit public comment on ACICS's compliance with those criteria, the application constitutes critical information that must be provided in order for public comment to be informed and meaningful.

Aside from the irony of the United States Department of Education claiming that its position should not be impacted by sloppy written language, the record indicates that the language was far from sloppy.[4]  *First*, to TCF's knowledge the Solicitation is the fourth time that such language has appeared in the Federal Register.  For example, on October 14, 2016, the Department issued a solicitation for third party comments about, *inter alia*, the compliance report submitted by another accreditor and included the *exact same language* about how comments regarding a compliance report "must relate to issues identified" in such a report.  81 Fed. Reg. 71089-01 (Oct. 14, 2016).  *See also, e.g.*, 82 Fed. Reg. 10479 (Feb. 13, 2017) (same language); 82 Fed. Reg. 34511 (July 25, 2017) (same language).

*Second*, as noted *supra*, on February 22, 2018—after oral argument and the issuance of the TRO—the Department released the Second Solicitation in which it again adopted language

---

[4] According to Herman Bounds, Director of the Department's Accreditation Group, only *after* the Department issued the Second Solicitation did the Department determine that the language "*might* cause confusion as to the scope of the comments being solicited."  Bounds Decl. [Dkt. 28-2] ¶ 12 (emphasis added).  This, of course, came 11 days after the Department argued to this court that the language was sloppily drafted.

6

that was purportedly sloppily drafted and *inconsistent* with the representations it made at oral argument—*i.e.*, stating that comments were being solicited "*on … the compliance report* submitted by the ABA," that it was extending the deadline "for the submission of comments *on the application*" submitted by ACICS and, separately called "for *comments on the initial application* for recognition of ACICS." 83 Fed. Reg. 7702 (Feb. 22, 2018) (emphasis added).[5]

But this was not the final word. After TCF notified Department counsel that the Department was continuing to interpret the HEA and regulations to solicit comments on the ACICS Application and ABA Report, the Department released the Third Solicitation. Elson Decl. ¶ 9 & Exh. 3. On this third try, the Department purported to "correct" both prior solicitations and claimed that it "has not traditionally provided" documents "in advance of the comment process," *id*, but the "fact that something has always been done a certain way does not necessarily mean that it is correct or lawful." Order at 8.

Sloppy drafting or not, the Third Solicitation represents the Department's clear attempt to reinterpret its position to serve litigation goals and should be disregarded by the Court. "[A]gency interpretations presented in litigation" are not entitled to deference when they are "post hoc rationalizations of past agency action or otherwise do not reflect the agency's fair and considered judgment." *Lockheed Martin Corp. v. Morganti,* 412 F.3d 407, 411 (2d Cir. 2005). Here, where the Third Solicitation was issued *after* the commencement of litigation in which the agency was made aware of the original language, and after a second use by the agency of its original language, the Third Solicitation "lacks the indicia of expertise, regularity, rigorous consideration, and public scrutiny" that results in deference to an agency's interpretation of its statutes and regulations. *S.E.C. v. Rosenthal*, 650 F.3d 156, 160 (2d Cir. 2011).

---

[5]   Defendants' Memorandum in Opposition to Plaintiff's Motion does not contain a single reference or citation to the Second Solicitation. It does appear in the Bounds Declaration, Dkt. 28-2 at ¶ 11.

The Department now claims that its regulations are not "ambiguous," and therefore the numerous solicitations should not be ignored as an interpretation of those regulations. Dept. Br. [Dkt. 27] at 16-17. But given that it has taken the Department three tries in approximately one month to publish an allegedly definitive application of its own regulations, it stretches credulity for the Department to now assert that the regulations are clear.

### IV. ADDITIONAL FACTORS SUPPORT FINDING THAT THE BALANCE OF HARDSHIPS TILTS DECIDEDLY IN TCF'S FAVOR & THE PUBLIC INTEREST WILL BE SERVED BY A PRELIMINARY INJUNCTION

The balance of the hardships in this case are decidedly in TCF's favor and the public interest will be served by the entry of a Preliminary Injunction. TCF Br. at 21-23. TCF would be remiss, however, in failing to address these additional points:

**1.** The Department suggested in the TRO hearing, *see* Order at 8, that the public is not entitled to comment on the application and compliance report in writing because the opportunity to provide oral comments before NACIQI obviates any harm caused by limitations on the written comment period. This argument is unavailing for two primary reasons.

*First*, NACIQI's rules strictly limit TCF's opportunity at the hearing. For example, they limit oral testimony to three minutes for individuals who provide advance notice to NACIQI, and "three to five" minutes for others, "depending on the number of requests received." Elson Decl. Exh. 4. Notably, these procedures also bar third-parties from "submit[ting] new written information to Committee members during the meeting." *Id.* (emphasis in original). The procedures also affirm that NACIQI "may only consider materials that are part of the official record, and those consist of materials submitted in accordance with Department regulations and the requirements specified in the applicable *Federal Register* notice[.]" *Id.*

8

*Second*, the Department assumes an equivalence between written comments and the opportunity to provide brief oral testimony.  But the APA itself rejects this substitution, establishing the primacy of *written* comments over oral presentations.  Indeed, in the notice and comment provisions of the APA, agencies are *required* to allow public participation in writing, and *may* supplement—but not substitute—that written participation with the "opportunity for oral presentation."  5 U.S.C. § 553(c).

**2.**     FOIA favors disclosure.  Nevertheless, the Department, now having produced documents to TCF, appears to be in violation of its obligations under FOIA's affirmative disclosure provisions, 5 U.S.C. § 552(a)(2).  Those provisions *require* the Department to "make available for public inspection in an electronic format" documents that have been released under FOIA and which have been requested three or more times.  Both of those prongs have been met here, *see* Miller Decl. Exh 1 & McCann Decl. Exh. 1, yet the Department has failed to provide this information, despite being prodded by TCF to do so.  Elson Decl. Exh. 2. Instead, the Department has informed the Court that interested parties may travel to Washington, D.C. to see documents only seven days prior to the NACIQI meeting. Mangold Decl. [Dkt. 28-1] ¶ 16.

**3.**     The Department has provided TCF with six business days in which to review approximately 20,000 pages of material and draft comments.  TCF is devoting its best efforts to meet this deadline, while the Department can only list a parade of speculative horribles that "may" result from adding two additional weeks to a public comment period.

*First*, no date has been formally announced for the next NACIQI meeting.  Shireman Decl. ¶ 16.  Thus, any rush appears to be a problem of Department and ACICS's making; a POLITICO story published this morning confirms that the Department consulted last summer with ACICS to move the June NACIQI meeting to May in order to "accommodate ACICS."

9

Elson Decl. ¶¶ 11-12 & Exhs. 5-6.  *Second*, despite the Department's assertion, Dep't Br. at 3, institutions of higher education are not "entitle[d] to participate" in Title IV programs.[6]  A two-week extension of the comment period does not alter this.  *Third*, the Department's assertion of harm to institutions and the federal treasury runs contrary to the clear direction of Congress, which gave institutions 18 months to find a new accreditor when an institution's accreditor loses recognition, 20 U.S.C. § 1099c(h)(2), and required the Department to seek public input during the recognition process.  *Fourth*, the Department's contentions about harm to ACICS ignores recent history: in 2016, the Department made a final decision, in line with a recommendation by career staff and NACIQI, that ACICS was pervasively noncompliant with Department regulations.  The Department continues to defend this decision.[7]  *Fifth*, the Department waited until January 23, 2018 to solicit written comments.  Notably, the ACICS application—at least as provided to TCF—was first transmitted in the fall of 2017 and apparently updated in December 2017.  All the while, the Department waited to solicit public comment while its staff informed ACICS in December 2017 that it "had not yet provided sufficiently persuasive evidence … to demonstrate compliance" with certain recognition criteria.  Shireman Decl. Exh. 1.

## CONCLUSION

For the reasons stated herein, and for those asserted in the Complaint and the submissions in support of a Temporary Restraining Order, TCF requests that the Court grant the Preliminary Injunction or, in the alternative, a good cause extension of the TRO pursuant to FRCP 65(b).

Respectfully Submitted,

---

[6]   *See, e.g.*, *Ass'n of Proprietary Colleges v. Duncan*, 107 F. Supp. 3d 332, 348 (S.D.N.Y. 2015) (agreeing with the Department and the D.C. Circuit that institutions of higher education do not have a vested right to continued eligibility to participate in Title IV federal funding programs under the HEA).

[7]   *See ACICS v. U.S. Department of Education*, No. 1:16-cv-02448-RBW (D.D.C.) (wherein, as recently as May 26, 2017, *see* Dkt. 69, the Department has defended its decision to terminate the recognition of ACICS).

/s *Alexander S. Elson*
Alexander S. Elson* (N.Y. Bar 4809976)
National Student Legal Defense Network
1440 G Street, N.W.
Washington, D.C. 20005
alex@nsldn.org
(202) 734-7495

*Counsel for The Century Foundation*

*Member of New York Bar only; practicing in the District of Columbia under supervision of members of the D.C. Bar while D.C. Bar application is pending.

Dated:  March 1, 2018

11

## CERTIFICATE OF SERVICE

      I, Alexander Elson, hereby certify that on March 1, 2018 I caused a copy of the foregoing Reply Memorandum to be served upon the counsel for defendants through the Court's ECF/CM system:

                      Rachael Doud
                      Office of the U.S. Attorney for S.D.N.Y.
                      86 Chambers Street, 3rd Floor
                      New York, NY 10007
                      rachael.doud@usdoj.gov


                      /s *Alexander S. Elson*
                      Alexander S. Elson* (N.Y. Bar 4809976)
                      *Counsel for The Century Foundation*

                      *Member of New York Bar only; practicing in the District of Columbia under supervision of members of the D.C. Bar while D.C. Bar application is pending.

March 1, 2018

12