**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| THE CENTURY FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>BETSY DEVOS, *in her official capacity*, and the UNITED STATES DEPARTMENT OF EDUCATION,<br><br>Defendants. | No. 18-cv-1128-PAC |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
ATTORNEY'S FEES AND COSTS**

Plaintiff The Century Foundation ("TCF") respectfully submits this Reply in further support of its motion for attorney's fees and costs under the Freedom of Information Act ("FOIA").  In its twenty-three page memorandum opposing TCF's motion, *see* Dkt. 44 ("Opp"), Defendants Secretary DeVos and the United Stated Department of Education (collectively "Department" or "ED") posit that there was no connection between the asserted FOIA claims and ED's release of records in this case—in essence, that ED's plan all along was to produce the 20,000 pages of material by the FOIA deadline.  This contention stands in stark contrast to the record before the Court, which includes: (i) prelitigation communications from ED to TCF and others making clear that the responsive documents would not be released anytime soon, if at all; (ii) an admission by counsel for the Department that the production was "accelerated significantly" by the litigation; *and* (iii) evidence that third-party organizations that submitted a FOIA request for substantially identical records to those sought by TCF's "ACICS Request," but

that did not file suit over those requests, have *still* not received anything close to the full FOIA response provided to TCF.

As set forth below and in TCF's Memorandum of Law in Support of Plaintiff's Motion for Attorney's Fees and Costs, *see* Dkt. 40 ("TCF Mem."), it is clear that this litigation prompted the Department to suddenly and voluntarily change its position and release the responsive records. Although the Department attempts to characterize this motion as "unprecedented," Opp. at 1, 12, and "novel," *id.* at 2, disposition of this motion requires nothing more than a textbook application of the FOIA fee provision to award fees to TCF. TCF is both eligible for, and entitled to, fees in the full amount set forth in the contemporaneously filed Second Declaration of Alexander Elson ("Second Elson Decl").[1]

## ARGUMENT

### I.    TCF Substantially Prevailed Under FOIA and is Therefore Eligible for Fees

Defendants assert that TCF is not "eligible" for fees under FOIA because TCF did not "substantially prevail" on its FOIA claims. Opp. at 8-15. Defendants also assert that TCF is ineligible for fees because TCF would not have been entitled to the relief it claims to have received, *id.* at 12-13, and that the Department did not "change its position" in response to TCF's suit, *id.* at 13-15. Each of these arguments lack merit.

### A.    TCF Substantially Prevailed on its FOIA Claims

As noted previously, TCF Mem. at 6-7, TCF's assertion of both eligibility and entitlement to fees is *not* premised on the entry of the TRO in this case, but rather is based on the result of this entire litigation—*including* the results achieved because of the three FOIA causes

---

[1]    TCF notes that it has performed certain downward adjustments to the fees sought after reviewing Defendants' submission. Any changes to the proposed fee award are described fully in the Second Elson Declaration.

of action—serving as catalyst of ED's "voluntary or unilateral change in position" with respect to the release of documents under FOIA.  5 U.S.C. § 552(a)(4)(E)(ii)(II).  *See also, e.g. Elec. Privacy Info. Ctr. v. United States Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 41 (D.D.C. 2016).

This case was brought under both the Administrative Procedure Act ("APA") (to enjoin the closure of the comment period) and FOIA (to review TCF's request for expedited processing of two FOIA requests and to enjoin the continued withholding of requested records).  Because TCF could not have properly sought, let alone received, the requested records under the APA, the FOIA claims were necessary to the outcome in this case.  *See, e.g.*, *Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency*, 279 F. Supp. 3d 121, 155 n. 9 (D.D.C. 2017) (noting that courts uniformly decline jurisdiction over APA claims that seek remedies entirely made available by FOIA).  Defendants, meanwhile, claim that although the records were released pursuant to FOIA, the *timeline* of the release was "entirely attributable" to the TRO, which was entered under the APA, and had nothing to do with the fact that claims had been filed under FOIA. Opp. at 9.[2]

The Department's position with respect to the pending motion fundamentally ignores the importance of TCF's FOIA claims to the result of this litigation.[3]  Under the catalyst theory, a

---

[2]  As noted previously, counsel for the Department has stated that "the documents were produced under FOIA in response to the FOIA request, but that was probably accelerated significantly beyond when it otherwise would have in the hopes that we would be able to move forward with this process and not have it delayed any further."  *See* TCF Mem. at 4-5 (citing Elson Declaration [Dkt. 40-1] ¶ 12 & Exh. 5 [Dkt. 40-6]) (Transcript of March 1, 2018 Oral Argument).

[3]  Defendants claim that TCF "does not contend that its FOIA claims … had any impact on the Department's timeline for producing documents in response to [its] FOIA requests, nor does it dispute that the outcome of the case would have been identical even if Plaintiff had not asserted FOIA claims at all."  Opp. at 9 (emphasis removed).  This is inaccurate.  Although TCF has asserted that the entry of the TRO has some causal requirement as to the precise timing of the release of the documents, TCF has never asserted that "the outcome of the case would have been identical even if Plaintiff had not asserted FOIA claims at all."  Nothing about the TRO required the Department to release the records.  Absent claims

plaintiff can "claim eligibility" to FOIA attorney fees "even without a favorable court judgment, if the litigation substantially caused the requested records to be released." *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 201–02 (D.D.C. 2016) (internal quotation marks omitted). *See also, e.g.*, *Batton v. I.R.S.*, 718 F.3d 522, 525 (5th Cir. 2013) (noting that the 2007 Open Government Act codified a theory for determining whether a plaintiff substantially prevailed in a FOIA case by defining "substantially prevail[ ]" as "obtain[ing] relief through ... a voluntary or unilateral change in position by the agency."); Department of Justice Guide to the Freedom of Information Act, Attorneys Fees at 10.[4]

In this case, there is simply no question that the FOIA causes of action had such a causal effect.  To start, it is clear that the Department released the records pursuant to FOIA.  *Supra* n.3.  The TRO only required the Department to keep two comment periods open until the expiration of the Order, it did not require the Department to release the records.  Dkt. 19.  Further, the Department has consistently maintained throughout this litigation that neither the APA nor the Higher Education Act required it to release the records at issue.  Indeed, at one point, the government went so far as to assert that TCF had "no legal right" under "any … authority" to receive the records.  *See* Defs.' Mem. of Law in Opp. to Plf's Mtn. for Prelim. Inj. [Dkt. 28] at 2

---

under FOIA, there is simply no reason why the Department would have treated TCF differently than it has treated, and continues to treat, other parties who have submitted substantially identical FOIAs but who have not received the same information.  *See infra* at 5.

[4]     Prior to the Supreme Court's decision in *Buckhannon Board and Care Home v. West Virginia Department of Health and Human Resources,* 532 U.S. 598 (2001), a plaintiff in a FOIA action could recover an award of attorney's fees where, despite achieving the release of the requested information, it does not secure any judicially sanctioned relief such as a judgment on the merits or a court-ordered consent decree. *See Union of Needletrades, Indus. & Textile Employees, AFL-CIO, CLC v. U.S. I.N.S.*, 336 F.3d 200, 201 (2d Cir. 2003).  In 2007, Congress expressly rejected *Buckhannon* and reinstated the catalyst theory, *i.e.*, providing by statute that a FOIA plaintiff has "substantially prevailed" if the plaintiff has "obtained relief through … a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *See, e.g., Judicial Watch, Inc. v. F.B.I.*, 522 F.3d 364, 370 (D.C. Cir. 2008).

(asserting that "Plaintiff has no legal right, under the APA, the HEA, the Department's regulations, or any other authority, to receive and comment upon the documents it requested.").

Having established that the records were released pursuant to FOIA, the relevant question is whether TCF has demonstrated that the litigation substantially caused the records to be released. In other cases, this may be hard to determine—particularly where claims are inextricably intertwined or where there is no other way to ascertain what would have happened absent the litigation. In this case, however, the record establishes that the FOIA claims served as the catalyst to "accelerate[] significantly," *supra* n.2, the Department's record release. As set forth previously, before TCF filed this lawsuit the Department showed no sign that it was on the verge of releasing the requested materials. TCF Mem. at 7-8. And that record has only been bolstered in the weeks since TCF filed the pending motion, as the third-party FOIA requesters who submitted similar FOIA requests long before TCF—but did not sue—have still not received complete responses to their requests. *See* Reply Declaration of Ben Miller ("Miller Reply Decl.") ¶¶ 10-12 & Miller Reply Decl. Exh. 4; Reply Declaration of Clare McCann ("McCann Reply Decl.") ¶¶ 9-11 & McCann Reply Decl. Exh. 5.

Finally, the Department asserts that the "mere presence" of FOIA claims as part of the litigation should be insufficient to establish eligibility for fees. Opp. at 9-10. But as we have established, the government's release of the agency records would not have happened but for the existence of those very claims. This is not a situation like that at issue in *Nichols v. Pierce*, 740 F.2d 1249, 1253 (D.C. Cir. 1984), cited by Defendants, Opp. at 11, where the plaintiff "neither sought nor obtained relief under [FOIA]". Here, TCF *both* sought *and* obtained relief under FOIA through the filing of the FOIA claims. The record in *this case*—as established through the Department's own statements about why it produced the records, the limited import of the TRO,

and the way the Department has treated other parties—plainly establishes TCF's eligibility for fees as a substantially prevailing party.

   None of the cases cited by the Department change this because each addresses a factual scenario not at issue here.[5]  For example, in *Hajro v. U.S. Citizenship and Immigration Servs.*, 900 F. Supp 2d 1034 (N.D. Cal. 2012), the District Court simply disaggregated the eligibility for fees *by* types of claims asserted, which is precisely what TCF has now done in response to ED's opposition brief.  *See infra* & Second Elson Decl. at ¶¶ 4-5. In *Poett v. U.S. Dep't of Justice*, No. 08-0622 (CKK), 2010 WL 3892249, at *4 (D.D.C. Sept. 30, 2010), plaintiff sought the recovery of fees under FOIA for documents released in a separate legal proceeding.  That case is plainly inapposite.  In *Mendez-Suarez v. Veles*, 698 F. Supp. 905, 907 (N.D. Ga. 1998), plaintiff was unable to establish whether the records were released "because of plaintiff's FOIA requests or because of discovery requests."  Here, the government has repeatedly stated that the records were released because of TCF's FOIA requests.

### B.      The Department's Other Arguments Lack Merit

   The Department also contends that "not only did Plaintiff not receive the documents it requested as a result of its FOIA claims in this lawsuit, but Plaintiff would not even have been entitled to that relief if it had prevailed on its FOIA claims."  Opp. at 12.  But the "immediate" release of the agency records is *precisely* a form of relief sought by the plaintiff in this case. Complaint [Dkt 9] at Prayer for Relief Nos. 1-2.

   Nor were TCF's claims "premature" or "insubstantial."  Opp. at 13.  TCF asserted a cause of action based on the Department's wrongful denial of its request for expedited

---

[5]      The Department attempts to distinguish cases cited by TCF by stating that they were brought "exclusively under FOIA." Opp. at 11, n.3.  This distinction is entirely irrelevant where FOIA was the *only* basis cited by the government for releasing the agency records to TCF.

processing.  Complaint [Dkt. 9] at 21-23.  *See* 5 U.S.C. § 552(a)(6)(E)(iii) (subjecting to judicial review "[a]gency action to deny ... a request [for expedited processing]").  Having asserted these claims, FOIA provides this Court with the authority to not only review the agency's response to the expedition request, but also to maintain jurisdiction over the matter until the agency has made a "complete" disclosure of the requested material. *See NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Hous. & Urban Dev.,* No. 07CIV. 3378(GEL), 2007 WL 4233008, at *6 (S.D.N.Y. Nov. 30, 2007).  *See also* 5 U.S.C. § 552(a)(6)(E)(iv).  There was simply nothing "premature" about TCF's lawsuit, even if filed before the expiration of the 20-day provision by which the government is to respond under FOIA.[6]

Finally, the Department remarkably contends that it "could not change its position" in response to the litigation because "it had yet not taken one."  Opp. at 13.  This is demonstrably false.  Prior to the filing of this litigation, the Department stated that certain of the materials would not be provided because "they are still working on the [ACICS] petition," there was "not [] a specific completion time available," and the FOIA would be processed "in the[] order of receipt," which was behind approximately 800 earlier-filed open FOIA requests.  TCF Mem. at 7.[7]  Nevertheless, the Department now suggests that, for reasons apparently unrelated to the

---

[6]    Moreover, pursuant to the DOJ FOIA Guidelines, only "two courts have found that a plaintiff's claim was 'insubstantial' and so rendered the plaintiff ineligible for attorney fees." United States Department of Justice Guide to the Freedom of Information Act, Attorneys Fees at 15 *available at:* https://www.justice.gov/sites/default/files/oip/pages/attachments/2015/01/29/attorney_fees_sent_for_post ing_january_29_2014.pdf.  Further, to determine if a claim is insubstantial, courts look to the entitlement factors. *Brayton v. Office of U.S. Trade Representative,* 641 F.3d 521, 526 (D.C. Cir. 2011).  Because TCF is entitled to fees, *seen infra,* its claim is clearly substantial. *See also Browder v. Fairchild,* No. 08-15, 2009 WL 2240388, at *2 (W.D. Ky. July 24, 2009) ("The claim is not insubstantial if the lawsuit was reasonably necessary to obtain the requested information.").

[7]    *Simon v. United States,* 587 F. Supp. 1029, 1032 (D.D.C. 1984), cited by the Department, Opp. at 14, is inapposite.  In *Simon,* unlike here, the government did not communicate to the requestor prior to litigation that the documents would not be made available anytime soon, and did not treat the requestor differently than similarly situated third-parties; rather the government simply produced the documents in due course, meaning that there was no change in position. *Simon,* 587 F. Supp. at 1031.

FOIA claims, TCF has somehow leapfrogged over all of those other requests, including requests filed prior to TCF's that sought, but still have not received, the same ACICS materials.

## II.     TCF is Entitled to Fees Under FOIA

Of the four factors that are to be considered when assessing entitlement to fees, the Department has not challenged TCF's showing that factors two and three support TCF's entitlement to fees.

With respect to the first factor, *i.e.*, the public benefit derived from the case, the Department has conceded that disclosure of the information sought was in the public interest. TCF Mem. at 9-10.  In response, the Department asserts that even if there is a public benefit in the disclosure of the information sought, there was no benefit derived from "this case," which, yet again, "significantly accelerated" the release of the materials.  Under the Department's view, it appears that although the public would benefit from the release of documents, the public would not benefit from the release at such a time to enable the drafting of written comments, as Congress believed appropriate.  *See* 20 U.S.C. § 1099b(n)(1). This cannot be.  Moreover, TCF has clearly sought these materials in the public interest as a "quintessential requestor of government information envisioned by the FOIA."  *See EPIC v. DHS*, 982 F. Supp. 2d 56, 63 (D.D.C. Oct. 15, 2013).  Accordingly, the first factor heavily favors TCF.

With respect to the fourth factor, the Department claims that it simply had not withheld the requested information.  But every indicia of evidence suggests that, absent the FOIA claims, the Department had no intention of producing the records.  The Department's treatment of third parties and its statements that TCF "has no legal right" under "any … authority" to "receive" the requested documents, Dkt. 27 at 2, strongly suggest that the Department had no intention of releasing the requested materials.  Regardless, even if the fourth factor favored ED, which it does

not, that still would not be enough.  *See New York Times Co. v. Cent. Intelligence Agency*, 251 F.

Supp. 3d 710, 714 (S.D.N.Y. 2017) (finding that plaintiff was entitled to fees even when the

government prevailed on the fourth factor); *Cornucopia Inst. v. Agric. Mktg. Serv.*, No. 16-cv-

2252 (ABJ), 2018 WL 354651, at *6 (D.D.C. Jan. 10, 2018) ("In sum, because three out of the

four factors favor plaintiff, the Court finds that plaintiff is entitled to recover attorneys' fees.").

### III.   TCF's Updated Accounting of Fees and Costs

In its opening brief, TCF requested $50,682.50 in fees, including "fees-on-fees" of

$7,837.50 and costs of $677.48, for a total of $51,359.98.  This was based on an hourly rate,

unchallenged by the Department, of $475 per hour.

The Department challenges the number of hours billed.  Upon further review, TCF

submits a modified accounting of its fees to ensure that only time spent on FOIA is included in

this petition.  The modified accounting is attached as Exhibit 1 to the Second Elson Declaration.

As set forth therein, counsel has reviewed contemporaneous billing records and eliminated from

the accounting all work that was not attributable to the FOIA claims.  Second Elson Decl. ¶ 4.

TCF therefore revises its fee request (excluding fees-on-fees) from $42,845.00 to $16,910.00.

*Id.* at ¶ 5.

With respect to "fees-on-fees," TCF respectfully requests that the 9.2 hours spent on this

reply brief be included in the accounting.  *Id.* at ¶ 6.  Although admittedly high, the Department

submitted an opposition brief that was twenty-three pages long and cited to thirty-three cases.

TCF therefore revises its "fees-on-fees" request from $7,837.50 to $13,490.00.

Combined with $677.48 in costs, TCF therefore seeks a total award of $ 31,077.48.

## CONCLUSION

For all of the reasons set forth herein and in TCF's opening submission, TCF has substantially prevailed in this case and is eligible for and entitled to recover fees and costs under FOIA. The award TCF seeks is reasonable and supported by the record. TCF therefore respectfully requests that the Court award it a total of $31,077.48 in reasonable fees and costs.

Respectfully submitted,

/s *Alexander S. Elson*
Alexander S. Elson* (N.Y. Bar 4809976)
National Student Legal Defense Network
1015 15th Street N.W., Suite 600
Washington, D.C. 20005
alex@nsldn.org
(202) 734-7495

*Counsel for The Century Foundation*

*Member of New York Bar only; practicing in the District of Columbia under supervision of members of the D.C. Bar while D.C. Bar application is pending.

Dated:  May 14, 2018

## CERTIFICATE OF SERVICE

I, Alexander Elson, hereby certify that on May 14, 2018, I caused a copy of the foregoing Reply Memorandum to be served upon the counsel for defendants through the Court's ECF/CM system:

> Rachael Doud
> Office of the U.S. Attorney for S.D.N.Y.
> 86 Chambers Street, 3rd Floor
> New York, NY 10007
> rachael.doud@usdoj.gov
>
> /s *Alexander S. Elson*
> Alexander S. Elson* (N.Y. Bar 4809976)
>
> *Counsel for The Century Foundation*
>
> *Member of New York Bar only; practicing in the District of Columbia under supervision of members of the D.C. Bar while D.C. Bar application is pending.

May 14, 2018