USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/22/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

THE CENTURY FOUNDATION,

     *Plaintiff,*

  -*against*-

BETSY DEVOS, in her official capacity, and
the UNITED STATES DEPARTMENT OF
EDUCATION,

     *Defendants.*

------------------------------------------------------------X

Case No. 18-cv-1128(PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

  Plaintiff The Century Foundation ("TCF") moves for attorneys' fees and costs pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E). Defendant, the United States Department of Education ("The Department"), opposes. For the following reasons, TCF's motion is DENIED.

## BACKGROUND

  On January 23, 2018, TCF submitted two FOIA requests to the Department. Compl. Exs. B, C. The FOIA requests sought materials in connection with a notice (the "Solicitation") that the Department had released for publication in the Federal Register the following day. *See* 83 Fed. Reg. 3335 (Jan. 24, 2018). The Solicitation called for public comments "concerning the performance of accrediting agencies," stated that written comments "must be received" by February 16, 2018, and explained that "[o]nly written material submitted by the deadline . . . become part of the official record." *Id.* Despite soliciting public comments "concerning the performance of accrediting agencies" and specifying that "[c]omments about an agency's

recognition after review of a compliance report must relate to issues identified in the compliance report," *id.*, strangely, the Department did not make publicly available the applications for recognition or the compliance reports submitted by the accrediting agencies. In other words, the Department was seeking comments on reports which it had not made available. Hence, TCF's FOIA requests sought disclosure of an application for initial recognition submitted by the Accrediting Council for Independent Colleges and Schools ("ACICS") and a compliance report submitted by the American Bar Association ("ABA"). Compl. Exs. B, C. TCF also requested a fee waiver and expedited processing of the FOIA requests in order to obtain the documents before the February 16, 2018 deadline for public comments. *Id.* On February 6, 2018, the Department granted TCF's request for a fee waiver, but it denied expedited processing, stating that TCF had "not demonstrated a compelling need for the information." Compl. Exs. F, G.

Two days later, on February 8, 2018, TCF brought this action alleging violations of FOIA and the Administrative Procedure Act ("APA"). *See* Compl., Dkt. 9. TCF sought to compel the Department under the APA to extend the comment period and under FOIA to immediately provide the requested documents. *Id.* ¶¶ 66-96. Upon filing the complaint, TCF informed the Department that it would seek emergency relief unless a resolution could be reached. Elson Decl. ¶ 8. After receiving no response, TCF moved for a temporary restraining order ("TRO") and a preliminary injunction on February 13, 2018. *See* Order to Show Cause, Dkt. 14.

On February 15, 2018, one day before the deadline for public comments, the Court held a hearing on the motion. The following morning, the Court entered an order granting a TRO ("TRO Opinion"). *See* TRO Opinion, Dkt. 19. The Court held that "TCF is entitled to a TRO prohibiting the Department from enforcing the deadline to submit written comments concerning ACICS and the ABA until the Court is in a position to rule on the [preliminary injunction.]" *Id.*

at 5. The Court granted this relief because TCF satisfied the requirements for a TRO "with regard to its Administrative Procedure Act ("APA") claim seeking to extend the comment period." *Id.* Specifically, the Court held that "by ending the comment period before TCF and other groups have an opportunity to review the application, the Department may very well be acting arbitrarily and capriciously [in violation of the APA]." *Id.* at 7. In contrast, the Court "expresse[d] no opinion on the merits of TCF's claim that the Department also violated FOIA," and the Court did not order the Department to produce the requested documents. *Id.* at 5.

Nevertheless, in the evening of the same day the TRO Opinion was entered, February 16, 2018, counsel for the Department informed counsel for TCF that "[t]he Department is providing the ACICS and ABA narrative statements to Plaintiff as an interim response to their FOIA requests." Elson Decl. ¶ 11. The Department subsequently produced the supporting exhibits accompanying the ABA Report on February 20, 2018 and the supporting exhibits accompanying the ACICS Application on February 21, 2018. Defs.' Mem. in Opp'n, Dkt. 27, at 7.

On March 1, 2018, the Court held a hearing on the motion for a preliminary injunction. During the hearing, the Court asked counsel for the Department why the Department turned around and decided to produce the documents. March 1 Conf. Tr., Dkt. 35, at 16:21-22. Counsel explained that the Department's production under FOIA "was probably accelerated significantly beyond when it otherwise would have in the hopes that [the Department] would be able to move forward with this process and not have it delayed any further," and "frankly, [the Department] expected that if the plaintiff got all the documents and had a full week to respond, that that would be sufficient." *Id.* at 17:8-16. At the close of the hearing, the Court denied the motion for a preliminary injunction. The Court held that TCF's FOIA claims were rendered moot since it had received the documents it requested. *Id.* at 44:10-11. The Court also held that

3

TCF's APA claim did not satisfy the requirements of a preliminary injunction because the balance of hardships no longer tipped in its favor. *Id.* at 44:11-19. The Court found that TCF had the opportunity to submit meaningful comments because of the production of documents beginning on February 16, 2018 and the extension of the comment period until the date of the hearing, March 1, 2018. *Id.* at 44:20–45:12. Thus, the TRO dissolved and the comment period ended at midnight on March 1, 2018. *Id.* at 46:16-19.

## LEGAL STANDARD

TCF seeks attorneys' fees pursuant to FOIA's fee provision, 5 U.S.C. § 552(a)(4)(E), which provides:

> (i) The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.
> (ii) For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either--
>     (I) a judicial order, or an enforceable written agreement or consent decree; or
>     (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.

TCF does not contend that it obtained the relief it sought under FOIA, the production of the documents, through a "judicial order." Rather, TCF's contends that it is eligible for fees under subsection (E)(ii)(II). This provision, which Congress added in 2007, codified the "catalyst theory" of fee eligibility, pursuant to which "FOIA plaintiffs [are] eligible for a fee award if the lawsuit substantially caused the agency to release the records." *Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C. Cir. 2010). Because this provision also requires that a claim not be "insubstantial," fees are prohibited if a defendant can "satisfy the summary judgment standard by showing that there are no genuine issues of material fact in dispute and that the government was justified as a matter of law in refusing the plaintiff's FOIA request." *Brayton v. Office of the*

4

*U.S. Trade Representative*, 641 F.3d 521, 526 (D.C. Cir. 2011).

Even if a plaintiff demonstrates that it is "eligible" for fees under FOIA, the court must also determine whether the applicant is "entitled" to fees by applying a four-factor balancing test. *Pietrangelo v. U.S. Army*, 568 F.3d 341, 343 (2d Cir. 2009). These factors are: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding requested information." *Id.* Finally, if the plaintiff is "eligible" and "entitled" to fees, the court must assess whether the fees sought are "presumptively reasonable under the lodestar approach generally applied to fee applications in the Second Circuit." *N.Y. Times Co. v. CIA*, 251 F. Supp. 3d 710, 713 (S.D.N.Y. 2017) (internal quotation marks omitted).

## ARGUMENT

The Department contends that TCF is not eligible for fees, is not entitled to fees, and is seeking an unreasonable amount in fees. The Court agrees with the Department that TCF is not eligible for fees, and so does not address its remaining arguments. TCF is not eligible for fees because the FOIA claims did not substantially cause the Department to release the documents, and, in any event, the FOIA claims were insubstantial.

### I. The FOIA Claims Did Not Substantially Cause the Production

FOIA provides for an award of attorneys' fees only where the plaintiff has "substantially prevailed" in a "case under this section"—*i.e.*, a case under FOIA. 5 U.S.C. § 522(a)(4)(E)(i). Hence, "a plaintiff's simultaneous pursuit of a separate claim concerning the same underlying facts as his FOIA claim poses a threat to the establishment of causation." *Poett v. U.S. Dep't of Justice*, No. 08-cv-0622, 2010 U.S. Dist. LEXIS 104900, at *10-11 (D.D.C. Sept. 30, 2010). For example, courts have found FOIA plaintiffs ineligible for fees where discovery on a separate

5

claim provided an alternative basis for an agency's decision to release requested documents. *See, e.g., Mendez-Suarez v. Veles*, 698 F. Supp. 905, 907 (N.D. Ga. 1988) ("The Court issued two orders to resolve disputes arising from the discovery requests, which presumably had some impact on the government's position concerning disclosure."). Other courts have held that plaintiffs may recover fees for relief obtained through successful FOIA claims but not parallel successful APA claims. *See, e.g., Nichols v. Pierce*, 740 F.2d 1249, 1254 (D.C. Cir. 1984) (holding that "[t]here might be circumstances in which an award of attorneys fees under FOIA would be an appropriate response to a suit brought to correct agency action which is deficient under both FOIA and the Administrative Procedure Act, but we are satisfied they are not present here" where the district court stated that "FOIA played little role in plaintiff's argument, and no role in the court's decision"); *Hajro v. U.S. Citizenship and Immigration Servs.*, 900 F. Supp. 2d 1034, 1041-44 (N.D. Cal. 2012) (applying Section § 522(a)(4)(E) to successful FOIA claims but not successful APA claim because "nothing in this [legislative] history suggests the intrusion of parallel rights, like due process, resulting from the same set of actions that violate FOIA—namely, withholding or delaying the production of documents—sustains recovery under Section 552(a)(4)(E)"), *reversed on other grounds by* 811 F.3d 1086 (9th Cir. 2016).

Similarly, TCF is not eligible for attorneys' fees; while TCF obtained the relief it sought under its FOIA claims, the Department's accelerated production of documents was not substantially caused by FOIA claims. Rather, the Department accelerated its production in response to the TRO Opinion, which was exclusively based on Plaintiff's APA claim. The Court expressed no opinion on the merits of Plaintiff's FOIA claims in the TRO Opinion. Indeed, the holding of the TRO Opinion would have been identical even if TCF had brought only its APA claim and had not asserted any FOIA claims at all. The TRO Opinion merely enjoined the

Department from closing the comment period because doing so "before TCF and other groups have an opportunity to review the application" might violate the APA. TRO Opinion, Dkt. 19, at 7. That reasoning does not necessarily imply that TCF had a right to immediate disclosure under FOIA. Regardless, the Department began producing the documents on the evening the TRO Opinion was entered, and its counsel later represented that it did so with the expectation that "if the plaintiff got all the documents and had a full week to respond, that that would be sufficient" to prevent any further delays in its process. Indeed, by immediately disclosing the documents and providing TCF with "a full week to respond," the Department tipped the balance of hardships and prevented a preliminary injunction from being issued on the basis of the APA claim. Thus, TCF cannot meet its burden to "demonstrate the existence of a causal nexus between the bringing of [the FOIA claims] and the release of the documents." *See Poett*, 2010 U.S. Dist. LEXIS 104900, at *9.

TCF's arguments to the contrary are unavailing. First, the cases that TCF cites are inapposite. Although they state in general terms that a plaintiff may be eligible for fees where the "lawsuit" or the "litigation" prompts an agency's production of responsive records, those cases were brought exclusively under FOIA, and the courts had no need to address a scenario where a lawsuit contains non-FOIA claims that are responsible for prompting disclosure. *See, e.g., Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 41 (D.D.C. 2016); *Terris, Pravlik & Millian, LLP v. Centers for Medicare & Medicaid Servs.*, 794 F. Supp. 2d 29, 38 (D.D.C. 2011).

Second, TCF conflates its FOIA claims with its FOIA requests. For example, TCF contends that "the FOIA causes of action had such a causal effect" because "it is clear that the Department released the records pursuant to FOIA." Pl.'s Reply Mem., Dkt. 45, at 4. The fact

that the Department produced the documents by means of a response to TCF's previous FOIA requests, however, is not relevant to whether TCF's FOIA causes of action asserted in this litigation substantially caused the production.

Third, where TCF does address its FOIA causes of action, it merely speculates as to their importance relative to the APA cause of action. For example, TCF argues that "[a]bsent claims under FOIA, there is simply no reason why the Department would have treated TCF differently than it has treated, and continues to treat, other parties who have submitted substantially similar FOIAs but who have not received the same information," because "[n]othing about the TRO required the Department to release the records." *Id.* at 4-5 n.3. The TRO did not need to require the Department to release the records, however, in order to provide motivation for the Department to do so. As explained above, the TRO was issued because TCF showed that it would be harmed if the comment period was closed before it had an opportunity to examine the requested documents, and because such an action would potentially violate the APA. Thus, even if disclosure of the documents was not an available remedy under the APA, the Department could reasonably believe that producing the requested documents before the TRO expired would allow it to prevail on the APA claim and prevent the issuance of a preliminary injunction. Nothing in the record suggests that the Department ever believed that TCF would instead prevail on its FOIA claims. Indeed, as explained below, TCF's FOIA claims were insubstantial. Therefore, TCF cannot show that its FOIA claims substantially caused the Department to accelerate its production. Accordingly, TCF did not substantially prevail on its FOIA claims, and it is not eligible for attorneys' fees.

## II. The FOIA Claims Were Insubstantial

TCF is ineligible for attorneys' fees under FOIA for the additional reason that its FOIA

claims were insubstantial. A claim is insubstantial where "the government was correct as a matter of law to refuse a FOIA request." *Brayton*, 641 F.3d at 525. TCF brought three claims under FOIA: (1) failure to produce requested documents; (2) denial of expedited processing of the FOIA request for the ACICS application; (3) denial of expedited processing of the FOIA request for the ABA compliance report. Compl. ¶¶ 77-96.

TCF's first FOIA claim was premature. TCF brought this claim before the statutory period for the Department to "determine within 20 [business] days . . . whether to comply with [TCF's requests]" had expired. *See* 5 U.S.C. § 552(a)(6)(A)(i). During that time, the Department never communicated to TCF that it planned to withhold any of the requested documents. Thus, TCF did not exhaust its administrative remedies, and it could not prevail on its claim for failure to produce documents. *See Toensing v. U.S. Dep't of Justice*, 890 F. Supp. 2d 121, 131-132 (D.D.C. 2012) (explaining that a plaintiff exhausts its administrative remedies when either an agency fails to respond to a FOIA request within the statutory response period, or the agency makes an adverse determination and the plaintiff administratively appeals it).

TCF's remaining two FOIA claims for denial of expedited processing also would have failed because the Department 's denial of expedited processing of the FOIA request was justified. To obtain expedited processing, a requester must demonstrate a "compelling need" for the requested documents by showing that either (1) failure to obtain expedited processing would pose an "imminent threat to the life or physical safety of an individual"; or (2) the requester is "primarily engaged in disseminating information," and there is an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v). The denial of a request for expedited processing is subject to judicial review, which "shall be based on the record before the agency at the time of the determination." *Id.* § 552(a)(6)(E)(iii).

TCF does not contend that it satisfies the "imminent threat" basis for expedited processing, and TCF's FOIA requests failed to adequately allege that TCF is "primarily engaged in disseminating information." The FOIA requests did not cite the test for establishing a "compelling need." *See* Compl. Ex. B, C. Rather, they requested expedited treatment "for the compelling reasons stated below," which described only the circumstances surrounding the Solicitation, TCF's need for the documents in order to comment meaningfully on the applications, and the short timeframe for public comment before the deadline. *Id.* In contrast, the FOIA requests expressly cited the test for obtaining a waiver of fees and explained why that test was satisfied. *Id.*

This fee waiver section of the FOIA requests contained the only references to TCF's activities. There, in order to show that the disclosure of the information was not in the commercial interest of TCF, the requests alleged that "TCF is a non-partisan think-tank. . . . TCF's mission is to foster opportunity, reduce inequality, and promote security at home and abroad. TCF uses the information it gathers, and its analysis of it, to educate the public through reports, social media, press releases, and regulatory comments to government agencies." *Id.* This statement does not establish that TCF is an organization that is "primarily engaged in disseminating information." The category of such organizations must be "narrowly construed," and courts "must be cautious in deeming non-media organizations as persons primarily engaged in information dissemination." *Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 275-76 (D.D.C. 2012). Hence, mission statements such as TCF's that do not specify whether information dissemination is the organization's primary activity fail to satisfy the test. *Compare id.* (holding that organization's statement that "among its primary activities is to disseminate to the public about the conduct of governmental agencies" was "not sufficient to show that [the

organization] is primarily, and not just incidentally, engaged in information dissemination" (alterations omitted)), *and Am. Civil Liberties Union of N. Cal. v. Dep't of Justice*, No. 04-4447, 2005 U.S. Dist. LEXIS 3763, at *24-25, 41 (C.D. Cal. Mar. 11, 2005) ("[I]nformation dissemination must be the main activity of the requester -- though it need not be his/her/its sole occupation. . . . [W]hile dissemination of information may be *a* main activity of ACLU-NC, there is no showing that it is *the* main activity.), *with Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (finding that organization was primarily engaged in disseminating information because its "mission is to serve as the site of record for relevant and up-to-the minute civil rights news and information"). As such, the Department was justified under FOIA to deny the requests for expedited processing. Accordingly, TCF's FOIA claims were insubstantial, and TCF is not eligible for attorneys' fees.

## CONCLUSION

For the reasons stated above, TCF's motion for attorneys' fees and costs is denied.

Dated: New York, New York  
      June 22, 2018

SO ORDERED

PAUL A. CROTTY  
United States District Judge